**Opinion issued June 11, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

NO. 01-11-00572-CR

————————————

**BRADLEY RAY MCCLINTOCK, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 182nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1280089**

---

## O P I N I O N

The police seized marijuana from appellant Bradley McClintock's apartment. They did so pursuant to a search warrant obtained with evidence of a drug-detecting dog's sniff at McClintock's back door, conducted without a

warrant.  The United States Supreme Court has since held that a dog-sniff under these circumstances is a search within the meaning of the Fourth Amendment. *Florida v. Jardines*, 133 S. Ct. 1409 (2013).

McClintock moved to suppress the fruits of the search, and the trial court denied the motion.  Reserving his right to appeal the evidentiary issue, he then pleaded guilty to the possession of marijuana in an amount from four ounces to five pounds.  *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.120, 481.121 (West 2010).  The main question raised by this appeal is whether, after excluding the evidence of the dog-sniff, the other information contained in the affidavit offered to obtain the warrant sufficiently established probable cause for the search.  We conclude it did not, and accordingly we reverse and remand for a new trial.

**Background**

Officers from the Department of Public Safety set up surveillance at a two-story brick duplex located at 412 West Clay Street in Houston.  The first floor is occupied by two businesses that manufacture raw vegan food and food for farmers' markets, while the second floor has a residential apartment.  The building has two front doors.  On the right, a door leads to the businesses' kitchen; on the left, the door leads to an enclosed stairway to the apartment.  A narrow driveway or alley leads to a backyard parking lot for the building.  There is a ground-floor entrance

2

to the businesses at the back of the building. Also in the backyard parking area is an open metal staircase leading up to a door for the second-floor apartment.

The DPS officers watched the building for about a week, observing McClintock's comings and goings from his apartment. Based on that investigation, Officer Ryan Arthur applied for a search warrant. The warrant affidavit sought to justify a search of McClintock's apartment based on the following information:

> Affiant received information that marijuana was being grown inside the 2nd floor residence located at 412 West Clay, Houston, Harris County, Texas. Affiant went to this location and found it to be located in Harris County, Texas. . . . . Affiant and other peace officers with the Texas Department of Public Safety set up surveillance on this location. During surveillance of this location over the last week of the making of this affidavit, affiant observed the following: the downstairs of this location appears to be a business, there is an open to the public stairway that leads to the upstairs. This set of stairs is located on the backside of the location which is a public parking area for the location/business. There are no gates, fences or doors that block access to this parking area or to the stairs leading to the door to the 2nd floor. This stairway is open to the public in that it could easily be where a delivery person could or would make deliveries to the upstairs residence area. Affiant has observed a male individual come and go from this location, at hours well before and after the business hours of the business on the first floor. Based on training and experience, Affiant found this to be consistent with possible narcotics activity.

> On September 29, 2010, Affiant approached this location. At this time, from the outside of this location, Affiant could smell, what Affiant knows from training and experience to be, marijuana. On this same date at approximately 11:30 pm, Affiant requested the assistance of a narcotics canine at this location. Affiant spoke with and obtained the assistance of Houston Police Department Canine Officer Kristin

3

Uhlin and her canine partner "Sita". Officer Uhlin stated that she and "Sita" are currently certified by the National Narcotics Detector Dog Association, # 48761, for the detection of the odors of marijuana, cocaine and methamphetamine. Affiant observed Officer Uhlin and "Sita" to deploy up to the second floor doorway using the open to the public stairway described above. Officer Uhlin stated to Affiant that at the doorway leading into the second floor of this location, "Sita" gave a positive alert at this location indicating the presence of one or more of the above named controlled substance.

The magistrate issued the requested search warrant, and the police seized marijuana from the apartment.

McClintock filed a motion to suppress, challenging the dog's sniff at the apartment's doorway as an illegal search. He argued that the stairway landing in front of the apartment door was curtilage, not a public space, and therefore he had a reasonable expectation of privacy there. The trial court found the warrant to be valid and denied the motion to suppress. Reserving his right to appeal from the adverse ruling, McClintock pleaded guilty to a state-jail felony. He then filed this timely appeal of the ruling on the motion to suppress.

## Analysis

We review a trial court's ruling on a motion to suppress using a bifurcated standard: we give almost total deference to the historical facts found by the trial court, and we review de novo the trial court's application of the law. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). When a trial court is determining probable cause to support the issuance of a search warrant, there are

4

no credibility determinations and the court is limited to the four corners of the affidavit. *Id.* (citing *Hankins v. State*, 132 S.W.3d 380, 388 (Tex. Crim. App. 2004)). The facts upon which the magistrate bases a probable-cause determination must appear within the four corners of the affidavit submitted in support of the request for a warrant. *See, e.g.*, *Crider v. State*, 352 S.W.3d 704, 707 (Tex. Crim. App. 2011); *Cassias v. State*, 719 S.W.2d 585, 587–88 (Tex. Crim. App. 1986). The affidavit must allow the magistrate to independently determine probable cause, and the magistrate's actions "cannot be a mere ratification of the bare conclusions of others." *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007) (quoting *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S. Ct. 2317, 2333 (1983)).

A magistrate shall not issue a search warrant without first finding probable cause that a particular item will be found in a particular location. *See, e.g.*, *McLain*, 337 S.W.3d at 272. In reviewing the affidavit before the magistrate, we interpret it in a commonsense and realistic manner. *Rodriguez*, 232 S.W.3d at 61. As long as the magistrate had a "substantial basis" for concluding that probable cause existed, we will uphold the magistrate's probable-cause determination. *McLain*, 337 S.W.3d at 271. "Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found at the specified location." *Id.* at 272.

## I.    Dog sniff

The government's use of a trained police dog to investigate the home and its immediate surroundings, called the curtilage, is a search under the Fourth Amendment. *Jardines*, 133 S. Ct. at 1417–18. The curtilage immediately surrounds and is associated with the home, such as a porch or other adjacent areas "to which the activity of home life extends." *Id.* at 1415 (quoting *Oliver v. United States*, 466 U.S. 170, 182 n.12, 104 S. Ct. 1735, 1743 (1984)). Although police may approach a home and enter the curtilage to knock on a door, just as any private citizen might, they lawfully may not approach a residence's door with the objectively apparent purpose of searching that residence without a warrant, as is demonstrated when the police approach with a trained drug-detection dog. *Id.* at 1416 & n.3. Such a search exceeds the implicit license granted by custom that allows strangers to approach a home and briefly solicit its occupants from within the curtilage. The Fourth Amendment protects against these violations of the ancient rule that "the property of every man [is] so sacred, that no man can set his foot upon his neighbour's close without his leave." *Id.* at 1415 (quoting *Entick v. Carrington*, 2 Wils. K. B. 275, 291, 95 Eng. Rep. 807, 817 (K.B. 1765)).

The boundaries of the curtilage are easily understood from daily experience. *Oliver*, 466 U.S. at 182 n.12, 104 S. Ct. at 1743. Curtilage includes a home's doors and porch, *see Jardines*, 133 S. Ct. at 1412, but does not include open fields,

which are outside the bounds of the home and are not immediately surrounding and associated with the home. *See, e.g.*, *Oliver*, 466 U.S. at 180–81, 104 S. Ct. at 1742; *United States v. Dunn*, 480 U.S. 294, 303, 307 S. Ct. 1134, 1141 (1987) (observation into a barn from an open field is not a search of a private area). Likewise, curtilage does not include public spaces such as the common areas or hallways of an apartment complex. *See, e.g.*, *United States v. Ramirez*, 145 Fed. App'x 915, 922–23 (5th Cir. 2005) (shared apartment complex balcony); *United States v. Hawkins*, 139 F.3d 29, 32–33 (1st Cir. 1998) (common areas of an apartment building); *United States v. Acosta*, 965 F.2d 1248, 1252 (3d Cir. 1992) (same).

In this case, the landing in front of the apartment's door is part of the apartment's curtilage. No different than a porch, the stairway landing attached to and surrounded the entrance to McClintock's home and the activity of home life extended onto it. McClintock kept several house plants on the landing. The stairway was not a "common" area; it led only and directly to McClintock's door. Bringing a trained drug-detection dog to conduct a search from the landing in front of McClintock's door exceeded any license which impliedly may have been granted merely to approach and solicit any residents of the apartment.

Thus, when the police officers used a trained dog to investigate McClintock's apartment from inside the curtilage, they intruded upon his home

7

and conducted a search within the meaning of the Fourth Amendment. *See Jardines*, 133 S. Ct. at 1417–18. Lacking a warrant, the search from within McClintock's curtilage was presumptively unreasonable unless it could be independently justified by the other information contained in the affidavit.

## II.     The remainder of the affidavit

"'When a search warrant is issued on the basis of an affidavit containing unlawfully obtained information, the evidence seized under the warrant is admissible only if the warrant clearly could have been issued on the basis of the untainted information in the affidavit.'" *Brackens v. State*, 312 S.W.3d 831, 838 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (quoting *Pitonyak v. State*, 253 S.W.3d 834, 848 (Tex. App.—Austin 2008, pet. ref'd)). In such a situation, we put aside the illegally obtained evidence from the affidavit and determine whether the remaining independently acquired and lawful information "clearly established" probable cause. *Martin v. State*, 67 S.W.3d 340, 343 (Tex. App.—Texarkana 2001, pet. ref'd); *see Pitonyak*, 253 S.W.3d at 848.

Probable cause for a search warrant exists if, under the totality of circumstances before the magistrate, there is a "fair probability" or "substantial chance" that contraband will be found in a particular place. *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010) (citing *Gates*, 462 U.S. at 238, 243 n.13, 103 S. Ct. at 2332, 2335). As previously noted, when determining probable cause

to support the issuance of a search warrant, the trial court is constrained to reviewing the four corners of the supporting affidavit. *McLain*, 337 S.W.3d at 271.[1]

The State argues that this affidavit was supported by three separate grounds to establish probable cause to search. First, the activity of McClintock coming and going, "at hours well before and after the business hours of the business on the first floor," was characterized as being "consistent with possible narcotics activity." Second, Officer Arthur himself smelled what was known to him "from training and experience to be, marijuana" from the outside of the "location." Third, there was the dog-sniff at the top of the stairwell. Disregarding the information from the dog search, the remaining facts do not establish probable cause.

---

[1] Accordingly, we may not rely on any bolstering "context" derived from the State's supplementary affidavit referenced during the hearing on the motion to suppress. The dissenting opinion's references to aluminum foil covering the windows, "a towel and plastic sealing" at "the bottom of the back door and around the seam near the door handle," or the more detailed descriptions of where the officer stood when he smelled the odor of marijuana, are all based on information that was not available to the magistrate at the time the search warrant was issued. The transcript of the oral hearing on the motion to suppress demonstrates that the supplemental affidavit referenced in the dissent was offered for a different purpose, and that trial court and counsel all correctly understood that the probable-cause determination was confined to the allegations within the four corners of the original affidavit tendered in support of the request for the search warrant.

The Fourth Amendment prohibits the issuance of any warrant except one "particularly describing the place to be searched, and the persons or things to be seized."  U.S. CONST. amend. IV.  The manifest purpose of this particularity requirement is to ensure that the search will be carefully tailored to its justifications and will not take on the character of a wide-ranging, exploratory, general search.  *Maryland v. Garrison*, 480 U.S. 79, 84, 107 S. Ct. 1013, 1016 (1987).  One of the constitutional objectives of "requiring a 'particular' description of the place to be searched" is to confirm that "probable cause is, in fact, established for the place described in the warrant."  *Long v. State*, 132 S.W.3d 443, 447 (Tex. Crim. App. 2004); *see also Taylor v. State*, 974 S.W.2d 851, 856 & n.12 (Tex. App.—Houston [14th Dist.] 1998, no pet.).  In other words, the probable cause required to justify a search warrant must specifically justify searching the place particularly described in the warrant.  *See, e.g.*, *Gates*, 462 U.S. at 238, 103 S. Ct. at 2332 ("The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found *in a particular place*." (emphasis supplied)); *Crider v. State*, 352 S.W.3d at 707 ("The probable-cause standard means that the affidavit must set out sufficient facts for the magistrate to conclude that the item to be seized will be on *the described premises* at the time the warrant issues and the search executed." (emphasis

10

supplied)); *Jones v. State*, 338 S.W.3d 725, 733 (Tex. App.—Houston [1st Dist.] 2011) ("Our inquiry . . . is whether there are sufficient facts, coupled with inferences from those facts, to establish a 'fair probability' that evidence of a particular crime will likely be found *at a given location*." (emphasis supplied)), *aff'd*, 364 S.W.3d 854 (Tex. Crim. App. 2012), *cert. denied*, 133 S. Ct. 370 (2012).

From these principles, it is plain that "when a building is divided into more than one residential unit, a distinct probable cause determination must be made for each unit." *United States v. Perez*, 484 F.3d 735, 741 (5th Cir. 2007) (quoting *United States v. Butler*, 71 F.3d 243, 249 (7th Cir. 1995)); *see also United States v. Shamaeizadeh*, 80 F.3d 1131, 1137 (6th Cir. 1996); *State v. Duran*, No. 08-10-00349-CR, 2011 WL 5569497 (Tex. App.—El Paso Nov. 16, 2011, no pet.) ("To search two separate living units, officers must obtain a warrant for each one."). If an affidavit simply states that occupants of a house have contraband, without specifically implicating the apartment in the building to be searched, the particularity requirement is not met. *Shamaeizadeh*, 80 F.3d at 1137.

## A.    Officer's detection of marijuana scent

In the affidavit, Officer Arthur stated that he smelled marijuana "from outside this location." Throughout the affidavit, he used "this location" to refer to the entire premises located at 412 West Clay. We do not second-guess whether the officer's nose knows the odor of marijuana. Accepting the officer's training,

11

experience, and qualification to recognize the scent, a positive identification by itself can be persuasive evidence supporting a probable-cause determination when the source of the odor is specifically identified. *See Davis v. State*, 202 S.W.3d 149, 156 (Tex. Crim. App. 2006). Nevertheless, Officer Arthur did not purport to specify that from his position outside of the "location," he actually identified the marijuana smell to be coming from the upstairs apartment, as opposed to another location such as the ground-floor purveyors of vegan food. Instead, the officer identified his own location and stated that he smelled marijuana "from the outside of this location." This is no grudging, hypertechnical reading of the affidavit. Probable cause must be tied to the particular place to be searched. Officer Arthur never said that he smelled marijuana coming from McClintock's apartment—like the dog later did at his request—nor can that be fairly inferred from what he did say.

Based on lawfully obtained information within the four corners of the original affidavit, the marijuana odor detected by the officer could have emanated from anywhere near the surveilled location, including the first-floor businesses or a neighboring house. Accordingly, Officer Arthur's statement concerning the odor, standing alone, does not support a determination of probable cause because it was not tied to the specific, particular place to be searched. *See McLain*, 337 S.W.3d at 272 (probable cause exists when "there is a fair probability that contraband or

evidence of a crime will be found at the specified location"); *see also Davis*, 202 S.W.3d at 156 (affidavit supported probable cause because police officer specified particular house from which he smelled odor of methamphetamine manufacturing).

## B.    Observed activity of suspect

Officer Arthur also observed that McClintock left and returned to his apartment "at hours well before and after the business hours of the business on the first floor." He further stated: "Based on training and experience, Affiant found this to be consistent with possible narcotics activity." While one may speculate that arriving at and departing from a residential apartment at times other than business hours could indeed be "consistent with possible narcotics activity," that bare observation by no measure establishes a "fair probability" or "substantial chance" that contraband will be found in a particular place. Indeed, on its face, the activity described by the officer is "apparently innocent"[2] and is equally consistent with other "possible . . . activity" that happens during the night at times "before

---

[2]    *Cf. Davis v. State*, 719 S.W.2d 149, 154 (Tex. Crim. App. 2006) (characterizing observations made in *Cassias v. State*, 719 S.W.2d 585 (Tex. Crim. App. 1986), of "several narcotics users" moving "in and out" of a surveilled residence "for brief periods of time" and one individual "carrying brick type packages believed to be marijuana" and "carrying a plastic tub and tubing into the back yard" as "nothing but apparently innocent activity").

13

and after . . . business hours," including walkin' after midnight,[3] working a hard day's night,[4] drinking champagne 'til early morning,[5] or just staying up all night for good fun.[6]  To the extent Officer Arthur purported to rely on "training and experience" to characterize his observations as being "consistent with possible narcotics activity," without further explanation of what made the activity suspicious, such characterization is conclusory and facially inadequate to establish probable cause.  *See Gates*, 462 U.S. at 239, 103 S. Ct. at 2333; *Nathanson v. United States*, 290 U.S. 41, 47, 54 S. Ct. 11, 13 (1933) ("Mere affirmance of belief or suspicion is not enough."); *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012) ("a magistrate's action cannot be a mere ratification of the bare conclusions of others"); *McKissick v. State*, 209 S.W.3d 205, 216 (Tex. App.—

---

[3]     *See, e.g.*, PATSY CLINE, WALKIN' AFTER MIDNIGHT (Decca 1957) ("I go out walkin' after midnight / Out in the moonlight, just like we used to do / I'm always walkin' after midnight, searching for you").

[4]     *See, e.g.*, THE BEATLES, A HARD DAY'S NIGHT (Parlophone 1964) ("It's been a hard day's night / And I've been working like a dog").

[5]     *See, e.g.*, CAL SMITH, DRINKING CHAMPAGNE (Kapp 1968) ("I'm drinking champagne, feelin' no pain 'til early mornin' / Dining and dancin' with every pretty girl I can find"); GEORGE STRAIT, DRINKING CHAMPAGNE (MCA 1990) (same).

[6]     *See, e.g.*, DAFT PUNK (FEATURING PHARRELL WILLIAMS), GET LUCKY (Columbia 2013) ("She's up all night 'til the sun / I'm up all night to get some / She's up all night for good fun / I'm up all night to get lucky").

14

Houston [1st Dist.] 2006, pet. ref'd) ("a mere conclusory statement will not suffice for a showing of probable cause").

## C.  Totality of the circumstances

Of course the magistrate did not, and we must not, simply consider each fact contained in the affidavit in isolation.  Instead, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision," considering "all the circumstances set forth in the affidavit," whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Gates*, 462 at 238, 103 S. Ct. at 2332.  And our duty as a reviewing court "is simply to ensure that the magistrate had a 'substantial basis'" for finding probable cause.  *Id*. at 238-39, 103 S. Ct. at 2332.  But even when the information that marijuana could be smelled in the vicinity of the "location" is combined with the observation of McClintock's coming and going, there is no "fair probability that contraband will be found" in his particular apartment.  *See id*.; *McLain*, 337 S.W.3d at 272.  The observation of a free citizen's ingress and egress from his private residence "at hours well before and after . . . business hours" in a neighborhood where marijuana can be smelled, without more, simply does not justify a police search of that person's home.

15

In an attempt to salvage the adequacy of the affidavit, the dissent credits an additional factor not even argued by the State in the trial court or on appeal[7]—that the smell of marijuana coming from somewhere around the surveilled location and the supposedly suspicious activity of entering and exiting an apartment at night are "buttressed by the tip" that Officer Arthur received from an unidentified source that "marijuana was being grown inside the 2nd floor residence." By way of introductory background, the affidavit stated that "Affiant received information that marijuana was being grown inside the 2nd floor residence located at 412 West Clay, Houston, Harris County, Texas." But no further information was provided about this apparent "tip."

Thus while the affidavit did explain the commencement of the surveillance by vaguely alluding to a tip, it provided none of the kind of additional information that is necessary if the State seeks to rely on an informant's tip to establish probable cause. And in fact the State has not relied on the tip from its unidentified informer to justify a finding of probable cause in this case. But if the State had so

---

[7] The State did not file a written response to the motion to suppress in the trial court. At the hearing on the motion, the State placed the main weight of its argument on its position that the dog-sniff was not a search for Fourth Amendment purposes. RR at 16. Likewise, on appeal the State did not even mention any "tip" in the section of its brief contending that "The Warrant Stands Even Without the Canine Sniff," instead relying solely upon the facts that the agent "had experience and training in the detection of marijuana and smelled it from outside the duplex." State's Brief at 16.

16

intended, it should have provided sufficient information to facilitate evaluation of the basis for the informant's knowledge or the informant's veracity. *See Gates*, 462 U.S. at 230, 103 S. Ct. at 2328 ("an informant's 'veracity,' 'reliability' and 'basis of knowledge' are all highly relevant in determining the value of his report"); *Cassias*, 719 S.W.2d at 588. "An inverse relationship exists between the reliability of the informant and the amount of corroborated information required to justify the police intrusion; the less reliable the tip, the more information is needed." *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011). The affidavit in this case provided no indication that the officer knew the identity of the informer,[8] that the informer had provided any other information that had been independently corroborated to establish some reliability, or any other information from which the magistrate could reasonably infer that the informer had any actual familiarity with McClintock or his affairs. *See Flores*, 319 S.W.3d at 703 (magistrate could infer familiarity when the affidavit specified that the informer

---

[8] Because nothing in the affidavit suggest otherwise, we must assume the information came from an anonymous source, which "alone seldom demonstrates the informant's basis of knowledge or veracity inasmuch as ordinary citizens generally do not provide extensive recitations of the basis of their everyday observations and given that the veracity of persons supplying anonymous tips is 'by hypothesis largely unknown, and unknowable.'" *Alabama v. White*, 496 U.S. 325, 329, 110 S. Ct. 2412, 2415 (1990) (quoting *Illinois v. Gates*, 462 U.S. 213, 237, 103 S. Ct. 2317, 2332 (1983)); *see also Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011).

told the offer he "had observed a quantity of cocaine inside the . . . residence in the past" and the informer "gave several details" about appellant and his residence "that were later corroborated in whole or in part," including the discovery of marijuana stems, seeds, and residue in the appellant's garbage).  The complete lack of such information deprived the "tip" of any value it might have otherwise contributed to a commonsense and realistic review of the other information contained in the affidavit.

## Conclusion

In sum, disregarding the information in the affidavit that was the product of the police's unreasonable warrantless search of McClintock's home with a drug-sniffing dog, the remaining information in the affidavit was only that a police officer could smell marijuana in the vicinity of the multi-unit building where McClintock lived, and that the officer observed him leaving and returning to his apartment at different hours than the hours of operation of the businesses below. Considering the totality of the circumstances, this is not enough information to demonstrate a fair probability that contraband would be found in McClintock's apartment.  Thus, there was no substantial basis in the affidavit for concluding that probable cause existed to search the upstairs apartment.  The motion to suppress the warrant obtained with this deficient affidavit should have been granted.

We reverse the ruling of the trial court and remand this cause to the trial court for a new trial without the evidence that should have been suppressed.  All pending motions are denied.

Michael Massengale
Justice

Panel consists of Justices Keyes, Massengale, and Brown.

Justice Keyes, dissenting.

Publish.  TEX. R. APP. P. 47.2(b).