

# NUMBER 13-13-00008-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**THE STATE OF TEXAS,**                                                          **Appellant,**

**v.**

**CHAD RICHARD BAYER,**                                                          **Appellee.**

## On appeal from the County Court at Law No. 1
## of Victoria County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Justice Rodriguez

Appellant, the State of Texas, challenges the motion to suppress granted in favor of appellee Chad Richard Bayer. By four issues, the State argues that the trial court erred in granting the motion to suppress because: (1) Bayer was not in custody at the time of his statement to police; (2) even if Bayer had been in custody, the marihuana

seized as a result of the statement is still admissible; (3) article 38.23 of the code of criminal procedure does not bar the admission of the marihuana, *see* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005); and (4) the marihuana was admissible under the doctrine of inevitable discovery, which this Court should consider reinstating. We affirm.

## I. Background

The following facts were drawn from the testimony at the suppression hearing and the evidence attached to the motion to suppress. In the early morning hours of June 9, 2012, officers with the Victoria Police Department broke through the doors and windows of Bayer's home, threw flash and smoke bombs into the interior, and rushed into the home, guns drawn. Bayer and his eight-year-old daughter immediately jumped from their beds; Bayer testified that his first concern was getting to his daughter. Bayer's daughter was struck in the face by one of the projectiles that came through the windows, causing serious injury. The curtain in Bayer's daughter's window caught fire when the flash bomb came through it. The police pointed their guns at both Bayer and his daughter and ordered them to lie on the floor. Police picked up Bayer's daughter and took her outside. After being handcuffed by the officers, Bayer was ordered to crawl to the door and sit on the steps of the porch. Bayer testified that he felt scared and confused, "completely invaded," and afraid that "somebody had hurt [his] daughter." When the police asked him whether there was anything illegal in the home, Bayer answered that there was a small amount of marihuana and told the police where it was located. The police found one-quarter ounce of marihuana in the exact location Bayer described.

2

The raid on Bayer's home was conducted pursuant to a warrant obtained by the police on June 7, 2012. Acting on anonymous tips that drug activity was taking place at Bayer's home, a K-9 unit was taken to the backside of the Bayer home, and when the dog sniffed the back door, it positively alerted to the odor of narcotics. The magistrate granted the police's application for a search warrant; the affidavit for the warrant was based on the anonymous tips to police and the K-9's signal at the back door.

Bayer was charged by information and complaint for possession of marihuana in an amount less than two ounces, a class B misdemeanor. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(a), (b)(1) (West 2010). He filed a motion to suppress, arguing that the search of his home and all the evidence taken violated his search and seizure rights under the United States and Texas Constitutions and the Texas Code of Criminal Procedure. Bayer further argued that the warrant obtained by police was overly broad and defective and, in relevant part, that the dog sniff that supported the warrant was illegally conducted.

After a hearing at which Bayer was the only testifying witness, the trial court granted Bayer's motion to suppress. In its findings of fact, the trial court noted the anonymous tips of drug activity at Bayer's home and the positive alert by the K-9 unit. It further noted that the "information included in the affidavit in support of the search warrant from the anonymous person and the crime stoppers tip [was] not shown to be reliable nor [was it] adequately corroborated." Finally, the trial court found that

> 7. The search of Defendant's residence . . . was conducted in the early morning hours of June 9, 2012. Defendant and his daughter were awakened to the sound of explosive smoke or gas projectiles crashing through the daughter's bedroom window. Injury was caused to

3

Defendant's ten year old daughter. A battering ram was utilized to break open the locked doors of the residence. Defendant was confronted at gunpoint, handcuffed and removed from the premises. The premises were searched.

8. After the initial search was complete, Defendant was questioned at the scene. Prior to questioning, Defendant was not advised of his *Miranda* rights. Defendant answered questions and told officers where a small amount of marihuana was located in the home. It was later found in the location the Defendant had described.

The trial court then concluded while there was probable cause to support the granting of the warrant, Bayer was in custody when he was questioned, and because he had not been read his *Miranda* rights, his statement and the marihuana discovered as a result of the statement should be suppressed. Specifically, the trial court concluded as follows:

2. In this case, Defendant was awakened at around 2:30am by flash bombs breaking through windows in his residence and by his door being broken in by a battering ram. He was met by officers with guns drawn. He was handcuffed and removed from the residence. Under these facts, the Court concludes that a reasonably prudent person would believe that his freedom of movement was significantly restrained.

3. Therefore, Defendant's statements describing the existence and location of the marihuana are inadmissible.

4. The marihuana was not located as a result of the search of the residence pursuant to a search warrant, but only after the Defendant was questioned as to whether the search of his residence was going to find anything illegal. Therefore, the marihuana is inadmissible.

The State then filed this appeal. *See* TEX. CODE CRIM. PROC. ANN. § 44.01(a)(5) (West, Westlaw through 2013 Legis. Sess.) (providing that the State may appeal the granting of a motion to suppress).

## II. Standard of Review

We review a trial court's ruling on a motion to suppress for an abuse of discretion,

4

under a bifurcated standard. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). The trial court is given almost complete deference in its determination of historical facts, especially if they are based on an assessment of credibility and demeanor. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). The same deference is afforded the trial court in its rulings on the application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of credibility and demeanor. *Id.* However, for mixed questions of law and fact that do not fall within that category, a reviewing court conducts a de novo review. *Id.*

In ruling on the motion to suppress, the trial court is the exclusive trier of fact and judge of the witnesses' credibility. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). We must uphold a trial court's ruling on a motion to suppress if that ruling is supported by the record and is correct under any theory of law applicable to the case. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); *Carmouche*, 10 S.W.3d at 327; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

### III.  Discussion

By four issues, all of which focus on the circumstances surrounding the police's questioning of Bayer outside his home, the State argues that the trial court erred in granting Bayer's motion to suppress. Although we would be remiss not to note our dismay at the violence of the raid on Bayer and his daughter's home, our disposition of this appeal nonetheless does not turn on the circumstances of that night. Rather, *Florida*

5

*v. Jardines*, a case by the United States Supreme Court that was handed down since the trial court's ruling in this case, clearly compels our holding—that the K-9 sniff at Bayer's backdoor was illegal and the resulting search warrant therefore unsupported.

In *Jardines*, the Miami-Dade police received an anonymous tip that marihuana was being grown at Jardines's home. 133 S.Ct. 1409, 1413 (2013). The police surveilled Jardines's property, and after fifteen minutes, when no one was observed coming or going, a K-9 unit was employed on Jardines's front porch. *Id.* The K-9 positively alerted to the odor of narcotics. *Id.* On the basis of the K-9 alert, the police obtained a warrant, and in the subsequent search of Jardines's home, marihuana plants were found. *Id.* Jardines was charged with narcotics trafficking. *Id.*

In holding that the K-9 sniff was an invasion of Jardines's Fourth Amendment rights, the Supreme Court stated:

> The Fourth Amendment provides in relevant part that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." The Amendment establishes a simple baseline, one that for much of our history formed the exclusive basis for its protections: When the Government obtains information by physically intruding' on persons, houses, papers, or effects, a "search" within the original meaning of the Fourth Amendment has undoubtedly occurred.

*Id.* at 1414 (internal citations and quotations omitted). It then elaborated as follows:

> The Fourth Amendment indicates with some precision the places and things encompassed by its protections: persons, houses, papers, and effects. The Fourth Amendment does not, therefore, prevent all investigations conducted on private property; for example, an officer may . . . gather information in what we have called "open fields"—even if those fields are privately owned—because such fields are not enumerated in the Amendment's text.

But when it comes to the Fourth Amendment, the home is first among equals. At the Amendment's "very core" stands "the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511 (1961). This right would be of little practical value if the State's agents could stand in a home's porch or side garden and trawl for evidence with impunity; the right to retreat would be significantly diminished if the police could enter a man's property to observe his repose from just outside the front window.

We therefore regard the area immediately surrounding and associated with the home—what our cases call the curtilage—as part of the home itself for Fourth Amendment purposes. That principle has ancient and durable roots. Just as the distinction between the home and the open fields is as old as the common law, so too is the identity of home and what Blackstone called the "curtilage or homestall," for the "house protects and privileges all its branches and appurtenants." 4 W. Blackstone, Commentaries on the Laws of England 223, 225 (1769). This area around the home is "intimately linked to the home, both physically and psychologically," and is where "privacy expectations are most heightened." *California v. Ciraolo*, 476 U.S. 207, 213, (1986).

*Id.* at 1414–15 (some citations and quotations omitted). In short, the K-9 sniff on Jardines's front porch was an illegal search.

The same result is compelled in this case. Based only on anonymous tips, the Victoria Police employed a K-9 unit on Bayer's backdoor. The K-9's positive alert to the odor of narcotics was included in the affidavit that formed the basis of the search warrant. But under *Jardines*, the K-9 sniff on Bayer's backdoor was an illegal invasion of the curtilage of Bayer's home and thus an illegal search that violated Bayer's constitutional rights. *See id.*; *see also McClintock v. State*, 405 S.W.3d 277, 283–84 (Tex. App.—Houston [1st Dist.] 2013, pet. granted); *State v. Williamson*, Nos. 05-12-00699-CR, 05-12-00700-CR, 2013 WL 1646636, at *2 (Tex. App.—Dallas Apr. 17, 2013, no pet.) (mem. op., not designated for publication) (applying *Jardines* and affirming

7

granting of motion to suppress where search warrant was based on illegal dog sniff of defendant's front door).

So unless the affidavit for the warrant contained other "untainted" information that established probable cause, the warrant in this case was defective. *See Brackens v. State*, 312 S.W.3d 831, 838 (Tex. App—.Houston [1st Dist.] 2009, pet. ref'd) (citing *Pitonyak v. State*, 253 S.W.3d 834, 848 (Tex. App.—Austin 2008, pet. ref'd)). Here, the only other facts in the affidavit purporting to establish probable cause were anonymous tips to the police that Bayer was selling drugs out of his home. In its findings of fact, the trial court specifically determined that these tips were unreliable. Because we must defer to all weight and credibility determinations by the trial court, *see Ross*, 32 S.W.3d at 856, we likewise find that the only remaining justification for the search warrant in this case—the anonymous tips—was insufficient to create probable cause. As such, the search warrant was invalid. *See Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007) (holding that the Fourth Amendment requires that a magistrate find probable cause to believe that a particular item will be found at a particular location before it may issue a search warrant).

Because we must affirm the trial court's ruling on any legal basis applicable to this case, we cannot say the trial court abused its discretion in granting Bayer's motion to suppress. *See Hubert*, 312 S.W.3d at 559. The search warrant in this case was invalid and the resulting search on Bayer's home illegal. *See Jardines*, 133 S.Ct. at 1414–15; *Rodriguez*, 232 S.W.3d at 60. And because the search was illegal, all evidence found incident to the search was inadmissible. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23;

8

*see also* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. The State's issues are overruled.

### IV. Conclusion

We affirm the order of the trial court granting the motion to suppress.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 13th
day of February, 2014.

9