ACCEPTED
14-15-00244-CR
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
12/16/2015 1:29:47 PM
CHRISTOPHER PRINE
CLERK

**No. 14-15-00244-CR**
**No. 14-15-00245-CR**
**No. 14-15-00246-CR**
**No. 14-15-00247-CR**

In the

**COURT OF APPEALS**

For the

**FOURTEENTH JUDICIAL DISTRICT**

At Houston

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
12/16/2015 1:29:47 PM
CHRISTOPHER A. PRINE
Clerk

| | | |
|---|---|---|
| **WALTER LOUIS JACKSON, JR.** | § | **APPELLANT** |
| **V.** | § | |
| **THE STATE OF TEXAS** | § | **APPELLEE** |

**APPEAL FROM THE 268ᵗʰ DISTRICT COURT**
**FORT BEND COUNTY, TEXAS**
**TRIAL COURT NO. 12-DCR-062008; 12-DCR-062010; 12-DCR-062011; 12-DCR-062012**

**STATE'S BRIEF**

*Counsel for Appellee, The State of Texas*
**JOHN F. HEALEY**
DISTRICT ATTORNEY
FORT BEND COUNTY, TEXAS
301 Jackson Street, Richmond, Texas 77469
(Tel.) 281-341-4460/(Fax) 281-238-3340

**JASON BENNYHOFF**
ASSISTANT DISTRICT ATTORNEY
FORT BEND COUNTY, TEXAS
301 Jackson Street, Richmond, Texas 77469
(Tel.) 281-341-4460/(Fax) 281-238-3340/jason.bennyhoff@fortbendcountytx.gov

**ORAL ARGUMENT NOT REQUESTED**

i

# IDENTIFICATION OF PARTIES

Pursuant to Tex. R. App. P. 38.1, a complete list of the names of all interested parties is provided below so the members of this Honorable Court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of the case.

**Appellant:**
**WALTER LOUIS JACKSON, JR.**

**Appellee:**
**THE STATE OF TEXAS**

**Counsel for Appellant:**
**ANDREW DORNBURG**
**(PRE-TRIAL)**
**CALVIN PARKS**
**(AT TRIAL)**
**PAUL LOVE**
**(AT TRIAL)**
**GERALD MOTON**
**(ON APPEAL)**

**Address(es):**
**Dornburg**
**310 Morton St., Suite 177**
**Richmond, Texas 77469**

**Parks**
**2925 Gulf Frwy Suite B #295**
**League City, Texas 77573**

**Love**
**600 59th Street, Suite 1001**
**Galveston, Texas 77551**

**IDENTIFICATION OF PARTIES** (cont.)

**Moton**
**11765 West Avenue PMB 24**
**San Antonio, Texas 78216**

**Counsel for Appellee/State:**
**JOHN F. HEALEY, JR.**
**District Attorney of Fort Bend County, Texas**
**Fort Bend County District Attorney's Office**
**Address(es):**
**301 Jackson Street, Rm 101**
**Richmond, Texas 77469**

**MATTHEW BANISTER**
**TANIYA HENDERSON**
**ELAN LEVY**
**Assistant District Attorneys, Ft. Bend County, Tx.**
**(AT TRIAL)**

**JASON BENNYHOFF**
**Assistant District Attorney, Ft. Bend County, Tx.**
**(ON APPEAL)**

**JOHN J. HARRITY, III**
**Assistant District Attorney, Ft. Bend County, Tx.**

**Trial Judge:**
**The Hon. Brady Elliott**
**268th Judicial District Court**
**Fort Bend County, Texas**

# TABLE OF CONTENTS

**SECTION**                                                                 **PAGE**

IDENTIFICATION OF PARTIES ........................................................................ ii

TABLE OF CONTENTS .................................................................................iv

INDEX OF AUTHORITIES.......................................................................... vii

STATEMENT REGARDING ORAL ARGUMENT.................................................xi

STATEMENT OF THE CASE......................................................................xi

ISSUES PRESENTED BY APPELLANT .................................................................1

STATEMENT OF FACTS ............................................................................1

SUMMARY OF THE ARGUMENT ......................................................17

RESPONSE TO APPELLANT'S FIRST AND SECOND POINTS OF ERROR
THE SEARCH WARRANT AFFIDAVIT WAS SUFFICIENT TO ESTABLISH PROBABLE CAUSE TO SEARCH THE APARTMENT AND GARAGE BECAUSE THE JARDINES RULING DOES NOT APPLY TO THESE LOCATIONS, AND EVEN IF IT DID, THIS COURT SHOULD REFUSE TO SUPPRESS THE EVIDENCE BECAUSE THE POLICE AND REVIEWING MAGISTRATE RELIED ON THEN-EXISTING BINDING PRECEDENT IN THE PROCUREMENT AND REVIEW OF THE SEARCH WARRANT, AND EVEN IF THE DOG SNIFF IS REMOVED FROM THE AFFIDAVIT, THERE WAS STIL SUFFICIENT PROBABLE CAUSE

. ...................................................................................................18

Standard of Review........................................................................18

Argument and Authorities...............................................................21

RESPONSE TO APPELLANT'S THIRD POINT OF ERROR
THE EVIDENCE WAS LEGALLY SUFFICIENT TO "AFFIRMATIVELY LINK" APPELLANT TO THE NARCOTICS SEIZED IN HIS APARTMENT AND GARAGE

. ...............................................................................................................35

Standard of Review..................................................................................35

Argument and Authorities.........................................................................35

RESPONSE TO APPELLANT'S FOURTH POINT OF ERROR
APPLICANT HAS NOT PROVEN THAT HIS COUNSEL WAS INEFFECTIVE

. ...............................................................................................................38

Standard of Review..................................................................................38

Argument and Authorities.........................................................................39

RESPONSE TO APPELLANT'S FIFTH POINT OF ERROR
APPELLANT HAS WAIVED HIS *BRADY* COMPLAINT, AND EVEN IF HE HAD NOT, HE HAS NOT SHOWN EITHER THE DESTRUCTION OF EVIDENCE, NOR THAT ANY SUCH SUPPOSEDLY DESTROYED EVIDENCE WAS MATERIAL

. ...............................................................................................................45

Standard of Review..................................................................................45

Argument and Authorities.........................................................................45

RESPONSE TO APPELLANT'S SIXTH POINT OF ERROR
APPELLANT POINTS TO NO EVIDENCE THAT THE STATE WITHHELD ANY AGREEMENT FOR LENIENCY WITH ANY WITNESS WHICH THE DEFENSE WAS NOT AWARE OF

. ...............................................................................................................48

Standard of Review.......................................................................48

Argument and Authorities..............................................................48

RESPONSE TO APPELLANT'S SEVENTH POINT OF ERROR
THE TRIAL COURT DID NOT ABUSE ITS DISCRETION WHEN IT DENIED APPELLANT'S MOTION FOR A MISTRIAL BECAUSE THE COURT GAVE AN EFFECTIVE CURATIVE INSTRUCTION

. ...............................................................................................................51

Standard of Review.......................................................................51

Argument and Authorities..............................................................52

PRAYER ...............................................................................................54

# INDEX OF AUTHORITIES

**Cases**

*Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007)..............................18

*Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007) ...............................52

*Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010) .........................35

*Brown v. State*, 605 S.W.2d 572, 577 (Tex. Crim. App. 1980) ...............................21

*Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995) ...............................36

*Chambers v. State*, 903 S.W.2d 21, 34 (Tex. Crim. App. 1995) .............................39

*Cuero v. State*, 845 S.W.2d 387, 391 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd)................................................................................................. 23, 24

*Davis v. State*, 202 S.W.3d 149, 154 (2006) .........................................................32

*Davis v. United States*, 131 S. Ct. 2419, 2423-24 (2011) ................................ 26, 29

*Davis v. United States*, 131 S.Ct. 2419, 2427 (2011)..............................................26

*Evans v. State*, 202 S.W.3d 158, 162 fn. 12 (Tex. Crim. App. 2006).......................37

*Evans v. State*, 995 S.W.2d 284, 286 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd)................................................................................................. 23, 24

*Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010) ...............................19

*Flores v. State*, 827 S.W.2d 416, 418 (Tex. App.—Corpus Christi 1992, pet. ref'd) ..............................................................................................................20

*Florida v. Harris*, 133 S.Ct. 1050, 1058 (2013) ....................................................31

*Florida v. Jardines*, 133 S.Ct. 1409, 1414-15 (2013) ................................. 7, 22, 25

*Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002)..............................45

*Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)................................51

*Houston v. State*, 663 S.W.2d 455 (Tex. Crim. App. 1984) ....................................35

*Illinois v. Caballes*, 543 U.S. 405, 409-410 (2005) ..............................................27

*Illinois v. Fisher*, 540 U.S. 544 (2004) ....................................................47

*Illinois v. Gates*, 462 U.S. 213, 236 (1983)................................... 19-21, 32

*Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994)..............39

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979) .......................................35

*Jones v. State*, 338 S.W.3d 725 (Tex. App.—Houston [1st Dist.] 2011) *aff'd* 364 S.W.3d 854 (Tex. Crim. App. 2012)..............................................33

*Jones v. State*, 338 S.W.3d 725, 733 (Tex. App.—Houston [1st Dist.] 2011 *aff'd* 364 S.W.3d 854 (Tex. Crim. App. 2012). .........................................20

*Ladd v. State*, 3 S.W.3d 547, 571 (Tex. Crim. App. 1999) ......................53

*Levy v. State*, No. 01-13-00379-CR, 2014 WL 3408697 (Tex. App.—Houston [1st Dist.] Jul. 10, 2014, pet. ref'd)...............................................40

*Matthews v. State,* 165 S.W.3d 104, 112 (Tex. App. - Fort Worth 2005, no pet.)....22

*McClintock v. State*, 405 S.W.3d 277, 280 (Tex. App.—Houston [1st Dist.] 2013, *rev'd on other grounds* 444 S.W.3d 15 (Tex. Crim. App. 2014)...........................25

*McClintock v. State*, 444 S.W.3d 15, 19 (Tex. Crim. App. 2014)............21

*McClintock v. State*, No. 01-11000572-CR, 2015 WL 6851826 (Tex. App.—Houston [1st Dist.] 2015, no pet. h.)...................................................26

*Ortiz v. State*, 93 S.W.3d 79, 88-89 (Tex. Crim. App. 2002) ..................40

*Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) ..................52

*Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005) .........36

*Porter v. State*, 93 S.W.3d 342 (Tex.App.—Houston [14th Dist.] pet. ref'd) .........27

*Rodriguez v. State*, 106 S.W.3d 224, 229 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd)..............................................................................31

*Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007) ..............20

*Romo v. State*, 315 S.W.3d 565 (Tex.App.—Fort Worth pet. ref'd)................. 27, 31

*Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005)..............38

*Satchell v. State*, 321 S.W.3d 127, 134 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd)...............................................................................................................37

*Shore v. State*, No. AP-75,049, 2007 WL 4375939 at *15-16 (Tex. Crim. App. Dec. 12, 2007) (not designated for publication).......................................................40

*State v. Fury*, 186 S.W.3d 67 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd)....46

*State v. Le*, 463 S.W.3d 872, 877 (Tex. Crim. App. 2015).......................................20

*State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011) ..............................19

*State v. York*, 404 S.W.3d 681, 686 (Tex. App. —Fort Worth, 2013, pet. ref'd) .....34

*Strickland v. Washington*, 466 U.S. 668 (1984) ......................................................39

*Taylor v. State* 410 S.W.3d 520, 527 (Tex.App.—Amarillo 2013, no pet.).............28

*Temple v. State*, 342 S.W.3d 572, 591 (Tex. App.—Houston [14th Dist.] 2010), *aff'd* 390 S.W.3d 341 (Tex. Crim. App. 2013) .....................................................45

*United States v. Agurs*, 427 U.S. 97, 112-13 (1976) ................................................47

*United States v. Dovali-Avila*, 895 F.2d 206 (5th Cir. 1990) ..................................27

*United States v. Dunn*, 480 U.S. 294, 301 (1987)....................................................23

*United States v. Hernandez*, 976 F.2d (5th Cir.), cert. denied, 508 U.S. 914 (1993) ...............................................................................................................................27

*United States v. Leon*, 468 U.S. 897, 906 (1984)............................................. 25, 26

*United States v. Ramirez*, 145 Fed. Appx. 915, 923 (5th Cir. 2005).......................24

*United States v. Seals*, 987 F.2d 1102, 1106 (5th Cir. 1993)..................................27

*Villareal v. State*, 935 S.W.2d 134, 139 (Tex. Crim. App. 1996)............................22

*Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004) .................................51

*Webb v. State*, 801 S.W.2d 529, 530 (Tex. Crim. App. 1990).................................35

*Westbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) ..........................52

*Whitaker v. State*, 977 S.W.2d 595, 600 (Tex. Crim. App. 1998)...........................53

*Williams v. State*, 995 S.W.2d 754, 761 (Tex. App.—San Antonio 1999, no pet.)..46

*Williams v. State*, No. 05-07-00704-CR, 1998 WL 348320 (Tex. App.—Dallas 1998, no pet.)....................................................................................................24

*Wilson v. State*, 7 S.W.3d 136, 146 (Tex. Crim. App. 1999)....................................45

*Wilson v. State*, 98 S.W.3d 265, 272 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd)......................................................................................................................31

**Statutes**

Tex. Code. Crim. Proc. art. 18.01(b), (c) ...............................................................19

Tex. Code Crim. Proc. art. 18.01(c)........................................................................20

Tex. Code Crim. Proc. art. 38.23(a)........................................................................30

Tex. Pen. Code §1.07(a)(40) ...................................................................................23

Tex. R. Evid. 508(c) .................................................................................................40

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Tex. R. App. P. 39, the State does not request oral argument.

**No. 14-15-00244-CR**
**No. 14-15-00245-CR**
**No. 14-15-00246-CR**
**No. 14-15-00247-CR**
In the
**COURT OF APPEALS**
For the
**FOURTEENTH JUDICIAL DISTRICT**
At Houston


**WALTER LOUIS JACKSON, JR.**  §                **APPELLANT**

**V.**                          §

**THE STATE OF TEXAS**          §                **APPELLEE**


**APPEAL FROM THE 268ᵗʰ DISTRICT COURT**
**FORT BEND COUNTY, TEXAS**
**TRIAL COURT NO. 12-DCR-062008; 12-DCR-062010; 12-DCR-062011; 12-DCR-062012**

## STATEMENT OF THE CASE

Appellant was charged in the instant cause numbers with four counts of possession with intent to distribute a controlled substance. (1CR9). Appellant was convicted by the jury and then sentenced by the jury to a term of confinement of 45 years in the Texas Department of Criminal Justice – Institutional Division, and a fine of $10,000. (1CR59, 65). This appeal follows. (1CR76).

## ISSUES PRESENTED BY APPELLANT

I. "The contraband in this case should have been suppressed because any purported police and magistrate reliance on precedent at the time the warrants were issued was misplaced." App. Br. at p. iii.

II. "The search warrant affidavits failed to establish probable cause." App. Br. at p. iv.

III. "Jackson did not have exclusive possession of the place where the contraband was found and the logical force of all of the evidence was insufficient to "affirmatively link" him to the contraband." App. Br. at p. iv.

IV. "Jackson received ineffective assistance of counsel at trial." App. Br. at p. iv.

V. "The State's failure to preserve evidence violated Jackson's due process rights." App. Br. at p. iv.

VI. "The prosecution violated its duty to provide Jackson a fair trial." App. Br. at p. iv.

VII. "The trial court abused its discretion in failing to grant Jackson's motion for mistrial." App. Br. at p. iv.

## STATEMENT OF FACTS

*The Motion to Suppress Evidence*

The State secured search warrants to search Appellant's home (which was an apartment in a large apartment complex) and his garage, which was separate and distant from Appellant's apartment. (12RR at Exs. 15, 16 at p. 1,2 of 7). The police also conducted a traffic stop of a vehicle Appellant was riding in which

1

revealed further evidence of narcotics activity by Appellant. (12RR at MTS Ex. 15 at p. 6 of 7).

Appellant moved to suppress the fruits of the searches of his home and garage which were searched pursuant to the search warrants. (1CR28). Appellant also moved to suppress the fruits of the warrantless search conducted during the traffic stop. (1CR28).

Following a pre-trial hearing, the trial court denied Appellant's motion to suppress evidence recovered from his home and garage which was recovered pursuant to the search warrants. (4RR58-59). The trial court granted Appellant's motion to suppress the evidence recovered from the traffic stop. (4RR61). Because the State did not pursue an appeal of the order suppressing the evidence from the traffic stop and did not seek to introduce it at trial, this issue will not be further addressed in this brief.

*The Search Warrant for Appellant's Apartment*

The State admitted copies of the search warrants and their supporting affidavits. (3RR98; 12RR at MTS Ex. 15, 16).

Exhibit 15 was the search warrant and supporting affidavit for the search of Appellant's apartment. (3RR98; 12RR at MTS Ex. 15). This search warrant affidavit stated that on or about February 21, 2012, a confidential informant had provided the police with information that Appellant was selling cocaine and

prescription pills and using both his residence and a leased garage unit to facilitate these sales.  (12RR at MTS Ex. 15 at p. 5 of 7).  The confidential informant was believed to be credible because he or she had "provid[ed] reliable information in the past that was proven credible in that he information lead to the arrest of individuals found in possession of contraband."  (12RR at MTS Ex. 15 at p. 5 of 7).

The affidavit also stated that Appellant was on parole for narcotics convictions from Louisiana.  (12RR at MTS Ex. 15 at p. 5 of 7).

The affidavit also related that other independent sources informed the police that Appellant supplied "both pills and cocaine to the Katy area bars and individuals in the area."  (12RR at MTS Ex. 15 at p. 5 of 7).  The affidavit also stated that Appellant was named by arrestees as being the source of narcotics in their possession on two different occasions.  (12RR at MTS Ex. 15 at p. 5 of 7).

In April of 2012, a reliable confidential informant told the police where Appellant was living and that he was living with Laura Cline.  (12RR at MTS Ex. 15 at p. 5 of 7).  The confidential informant told police that Cline was helping Appellant sell drugs.  (12RR at MTS Ex. 15 at p. 5 of 7).  The affiant learned that Cline's name was on the apartment lease and that she and Appellant rented a garage on the premises.  (12RR at MTS Ex. 15 at p. 5 of 7).

On May 8, 2012, the affiant saw Appellant and Cline meet in a parking lot of the apartment complex where the confidential informant said they lived and where Cline's name was on the lease. (12RR at MTS Ex. 15 at p. 5 of 7). On the same day, the affiant saw Appellant use a remote control to open the garage door to the garage that Appellant and Cline rented. (12RR at MTS Ex. 15 at p. 5 of 7).

Appellant was then stopped for a traffic violation, and a subsequent search of his vehicle following a positive dog alert to the odor of narcotics revealed approximately $6,000 in cash and prescription pills belonging to Appellant. (12RR at MTS Ex. 15 at p. 6 of 7).

On September 18, 2012, the affiant was told by Detective Arredondo that patrons of the Frankenstein's sports bar on Mason road had made complaints that Appellant was selling drugs there. (12RR at MTS Ex. 15 at p. 6 of 7). Thereafter, after "multiple days of surveillance," the affiant saw Appellant park his vehicle in the garage rented by Appellant and Cline. (12RR at MTS Ex. 15 at p. 6 of 7).

On October 1, 2012, the affiant had a meeting with a detective with the Department of Public Safety who told the affiant that he also had learned that Appellant was supplying narcotics to the Katy area. (12RR at MTS Ex. 15 at p. 6 of 7).

On October 18, 2012, the affiant saw Appellant engage in what appeared to be two hand-to-hand drug transactions. (12RR at MTS Ex. 15 at p. 6 of 7).

On October 24, 2012, Detective Hricko conducted a dog sniff of the apartment and garage. (12RR at MTS Ex. 15 at p. 6-7). The dog alerted to the presence of a narcotic odor on the garage and the apartment. (12RR at MTS Ex. 15 at p. 7 of 7).

The search warrant was signed by the reviewing magistrate at 5:30 p.m. on October 24, 2012. (12RR at MTS Ex. 15 at p. 1 of 7). The search warrant was executed on the same day (12RR at MTS Ex. 15 at p. 2 of 7). The search of the apartment yielded marijuana, pills, cocaine, two scales, money, pharmacy bottles, a key, and a remote control for a garage door opener. (12RR at MTS Ex. 15 at p. 2 of 7).

*The Search Warrant for Appellant's Garage*

Exhibit 16 was the search warrant and supporting affidavit for the search of Appellant's garage. (3RR98; 12RR at MTS Ex. 16). This search warrant affidavit stated that on or about February 21, 2012, a confidential informant had provided the police with information that Appellant was selling cocaine and prescription pills and using both his residence and a leased garage unit to facilitate these sales. (12RR at MTS Ex. 16 at p. 5 of 7). The confidential informant was believed to be credible because he or she had "provid[ed] reliable information in the past that was proven credible in that he information lead to the arrest of individuals found in possession of contraband." (12RR at MTS Ex. 16 at p. 5 of 7).

The affidavit also stated that Appellant was on parole for narcotics convictions from Louisiana. (12RR at MTS Ex. 16 at p. 5 of 7).

The affidavit also related that other independent sources informed the police that Appellant supplied "both pills and cocaine to the Katy area bars and individuals in the area." (12RR at MTS Ex. 16 at p. 5 of 7). The affidavit also stated that Appellant was named by arrestees as being the source of narcotics in their possession on two different occasions. (12RR at MTS Ex. 16 at p. 5 of 7).

In April of 2012, a reliable confidential informant told the police where Appellant was living and that he was living with Laura Cline. (12RR at MTS Ex. 16 at p. 5 of 7). The confidential informant told police that Cline was helping Appellant sell drugs. (12RR at MTS Ex. 16 at p. 5 of 7). The affiant learned that Cline's name was on the apartment lease and that she and Appellant rented a garage on the premises. (12RR at MTS Ex. 16 at p. 5 of 7).

On May 8, 2012, the affiant saw Appellant and Cline meet in a parking lot of the apartment complex where the confidential informant said they lived and where Cline's name was on the lease. (12RR at MTS Ex. 16 at p. 5 of 7). On the same day, the affiant saw Appellant use a remote control to open the garage door to the garage that Appellant and Cline rented, which was the subject of this search warrant. (12RR at MTS Ex. 16 at p. 5 of 7).

Appellant was then stopped for a traffic violation, and a subsequent search of his vehicle following a positive dog alert to the odor of narcotics revealed approximately $6,000 in cash and prescription pills belonging to Appellant. (12RR at MTS Ex. 16 at p. 6 of 7).

On September 18, 2012, the affiant was told by Detective Arredondo that patrons of the Frankenstein's sports bar on Mason road had made complaints that Appellant was selling drugs there. (12RR at MTS Ex. 16 at p. 6 of 7). Thereafter, after "multiple days of surveillance," the affiant saw Appellant park his vehicle in the garage rented by Appellant and Cline. (12RR at MTS Ex. 16 at p. 6 of 7).

On October 1, 2012, the affiant had a meeting with a detective with the Department of Public Safety who told the affiant that he also had learned that Appellant was supplying narcotics to the Katy area. (12RR at MTS Ex. 16 at p. 6 of 7).

On October 18, 2012, the affiant saw Appellant engage in what appeared to be two hand-to-hand drug transactions. (12RR at MTS Ex. 16 at p. 6 of 7).

On October 24, 2012, Detective Hricko conducted a dog sniff of the apartment and garage. (12RR at MTS Ex. 16 at p. 6-7). The dog alerted to the presence of a narcotic odor on the garage and the apartment. (12RR at MTS Ex. 16 at p. 7 of 7).

The search warrant was signed by the reviewing magistrate at 5:30 p.m. on October 24, 2012. (12RR at MTS Ex. 16 at p. 1 of 7). The search warrant was executed on the same day (12RR at MTS Ex. 16 at p. 2 of 7). The search of the garage yielded pills, cocaine, ecstasy, money, a scale, and a remote control for the garage door opener. (12RR at MTS Ex. 16 at p. 2 of 7).

*Evidence Regarding whether the dog sniff was conducted within the curtilage of a home*

Investigator Hricko with the Fort Bend County Narcotics Task Force who testified that he was responsible for acting as a uniformed officer and canine handler for the Task Force. (2RR6-8). Hricko worked with a canine named Mike. (2RR9). Hricko and Mike were certified to work together as a canine unit. (2RR11-12).

Hricko and Mike conducted the dog sniffs of Appellant's home and garage which was referenced in the search warrant affidavits. (3RR95).

The State introduced photographs of the apartment complex, including the stairwell which went past Appellant's apartment. (12RR at MTS Exs. 1-10). The State also introduced photographs showing the detached garage. (12RR at MTS Exs. 1-10).

The photograph in State's Exhibit 7 shows the stairwell and the front door of Appellant's apartment from above. (3RR67; 12RR at MTS Ex. 7). The

photograph in State's Exhibit 8 shows the stairwell and the front door of Appellant's apartment from below. (3RR67; 12RR at MTS Ex. 8).

Detective Newton of the Fort Bend County Narcotics Task Force testified that the area in front of Appellant's apartment was an area where tenants came and went and tenants and their guests used it as a common area. (3RR116).

The photograph in State's Exhibit 4 shows the building which contained Appellant's apartment, and across the parking lot, the building which contained approximately nine garages, including Appellant's. (3RR67; 12RR at MTS Ex. 4).

The trial court denied Appellant's motions to suppress the search of his garage and apartment. (4RR62). In so doing, the trial court expressed its opinion that the areas which were the subject of the dog sniff did not come within the definition of curtilage as defined in *Jardines*. (4RR59).

*The Trial*

Detective Arredondo of the Fort Bend County Sheriff's Office testified that he observed Appellant engaging in activities that appeared to him to be narcotics transactions in 2011 and 2012 at a bar where Arredondo was working an extra job. (7RR25). These included quick interactions with numerous patrons and going into the bathroom with numerous patrons. (7RR36-37). Arredondo had seen Appellant because he and Appellant lived at the same apartment complex. (7RR26-27).

9

Arredondo responded to a call of a break in at Appellant's apartment on July 29, 2011, and found narcotic pills in the apartment next to a dresser with men's clothing items in it. (7RR31-34; 12RR at Ex. 131-138). Appellant told Arredondo that these pills were Appellant's prescription medication. (7RR42).

Charlie Scott of the Fulshear Police Department testified that while he was with the Fort Bend County Sheriff's Office, he worked as a courtesy officer at Appellant's apartment complex. (7RR50). Scott worked at Appellant's apartment complex from 2010 through October or November of 2012. (7RR51). Scott became aware of Appellant because Appellant drove a flashy car and came and went at all hours of the day and night. (7RR53). Scott knew Appellant to use a garage on the north end of the parking lot and had seen Appellant's car in that garage. (7RR54). Scott knew Appellant to be living with a female, but did not know her name. (7RR54). Scott knew Appellant's girlfriend to drive a white Chevy Impala, but had not seen that car in the garage. (7RR54-55).

Scott was told by a concerned resident that he knew only as Pete that Pete believed Appellant was up to something suspicious. (7RR55).

Scott made a traffic stop of Appellant's vehicle at one time with Appellant driving, and Appellant seemed extremely nervous. (7RR57). Scott searched Appellant's vehicle and located a substantial amount of money and an "abnormally

large" amount of pills, but those pills had Appellant's name on them, so he was not arrested. (7RR57). Scott told Detective Newton about this encounter. (7RR59).

Scott identified Appellant as the person he was talking about, and stated that the activities he observed Appellant engaged in were consistent with someone engaged in the sale of narcotics. (7RR76-77).

Detective Hricko of the Fort Bend County Sheriff's Office had his drug dog attempt to find the odor of narcotics at Appellant's apartment complex. (8RR34). Photographs of Appellant's apartment complex and garage were introduced into evidence. (8RR34; 12RR at Ex. 63-72). Hricko ran his dog on October 24, 2012. (8RR35).

Hricko took his dog to the stairwell that ran past Appellant's apartment, and Hricko's dog sniffed his way along that stairwell until he stopped at Appellant's doorway, indicating he smelled the odor of narcotics emanating from Appellant's apartment. (8RR38). Hricko also ran his dog on the detached garages, and his dog alerted to the presence of narcotics emanating from garage A3, which was Appellant's garage. (8RR42).

After running his dog, Appellant saw a blue Honda enter garage A3, and Appellant was the passenger in that vehicle. (8RR44).

Hricko ran his dog inside Appellant's apartment after the search warrant was procured and the dog alerted to the presence of narcotics inside the apartment,

above the kitchen cabinets. (8RR47). A large quantity of cocaine was recovered in that location. (8RR47). Hricko's dog also alerted in the bedroom dresser and narcotics were found there as well. (8RR48). Hricko's dog also ran inside Appellant's garage and alerted to the presence of narcotics inside a Walgreens bag, which ultimately was found to contain narcotics. (8RR48).

Hricko identified Appellant as the person he knew to be Walter Jackson – the target of the investigation. (8RR50).

Sergeant Baker of the Fort Bend County Narcotics Task Force testified that during the search of Appellant's apartment, marijuana was found in the kitchen cabinet. (9RR19; 12RR at Ex. 21). A scale, the type of which is typically associated with narcotics distribution was also located. (9RR19-20; 12RR at Ex. 22).

Cocaine was found in the cabinet above the refrigerator. (9RR20-21; 12RR at Ex. 26). A beaker was found with this cocaine, which is typically used to convert powder cocaine into crack cocaine. (9RR21; 12RR at Ex. 27). The apartment also contained oxycodone and fentanyl. (9RR39).

A dresser in the apartment contained both men's and women's clothes, divided between each side of the dresser. (9RR22-23; 12RR at Ex. 34).

A 500 count bottle of hydrocodone, the kind a distributor would send to a pharmacy rather than for retail sale, was also found in the apartment. (9RR23-24;

12RR at Ex. 37). Multiple bags of cocaine and a scale with cocaine residue on it were also discovered in Appellant's apartment. (9RR24-25; 12RR at Exs. 39-40).

Narcotics, and money were found in the garage, in particular inside a baby carrier. (9RR37; 12RR at Ex. 43, 45). The garage was found to contain a 500 count bottle of hydrocodone, suboxone, and fentanyl. (9RR27-28; 12RR at Ex. 53). The garage also contained cocaine, oxycodone and ecstacy. (9RR38-40).

Paperwork with Appellant's name on it was also found inside the garage. (9RR27; 12RR at Ex. 49-50). A picture of Appellant with a small child was also found in the garage. Paperwork with Appellant's name on it was also found inside the garage. (9RR30; 12RR at Ex. 61). The garage also contained a lot of male clothing. (9RR66).

Detective Newton of the Fort Bend County Narcotics Task Force initially began his investigation into Appellant's illegal activities based on a tip from a confidential informant named Stephanie Due. (9RR87). This confidential informant told Newton who Appellant was, what types of narcotics he sold and where he could be found. (9RR87). A second confidential informant, who was not named, gave Newton information as to the continuing nature of Cline's and Appellant's relationship. (9RR65).

Newton also was informed by Detective Arredondo that Arredondo believed Appellant was engaged in the sale of narcotics. (9RR88). Based on these pieces of

13

information, Newton conducted surveillance of Appellant at the bar in Katy where Arredondo worked an extra job in September of 2012. (9RR90).

Newton saw Appellant coming and going from the aforementioned bar on many occasions and also saw Appellant coming and going from the apartment which was the subject of the search warrant on many occasions. (9RR91-94). Newton also saw Appellant go in and out of the garage which was the subject of the search warrant. (9RR96).

Newton did not see Laura Cline, Appellant's girlfriend, go out of the garage, but did see her and Appellant go in and out of the apartment together several times. (9RR96). Newton followed Cline several times and she always appeared to be engaged in legitimate activities, rather than drug sales as with Appellant. (9RR97).

Newton saw Appellant engage in a pair of "hand-to-hand" transactions on October 18, 2012, which appeared in his mind to be drug deals. (9RR100-02). In May of 2012, Newton saw Appellant with a brown paper bag tucked under his arm go to his car. (9RR106-07). Scott made a traffic stop on Appellant's vehicle, and a canine later alerted to the presence of narcotics in Appellant's vehicle. (9RR108). The search of Appellant's vehicle based on this traffic stop revealed the presence of what appeared to be cocaine in the floor mat, $6,000 cash and prescription pills. (9RR109-10).

14

Newton identified the following items as having been recovered during the search:

137.7 grams of cocaine was located above the refrigerator (9RR133);

118 hydrocodone pills weighing 96.13 grams above the refrigerator (9RR133);

116 pills labeled Watson 502 (Xanax) in the garage (9RR133);

A box of Fentanyl in the garage and additional Fentanyl above the refrigerator for a total of 19.5 grams (9RR133, 146);

4 grams of Ecstacy in the garage (9RR135);

7.38 grams of cocaine in the garage (9RR145);

892.8 grams of hydrocodone in the garage (9RR145)

13.13 grams of oxycodone found above the refrigerator (9RR146);

7 grams of oxycodone found in the garage (9RR146);

20.99 grams of Suboxone found in the garage (9RR146);

66.6 grams of suboxone found in the bedroom closet with another 21.5 grams above the refrigerator (9RR146).

Laura Cline was much smaller physically than the six-foot-four Appellant. (9RR150). The drugs hidden above the refrigerator would have been difficult for Cline to reach. (9RR150-51).

Cline testified that she was introduced to Appellant during the course of a drug deal. (10RR94). Cline moved into the Residences at Cinco Ranch

15

apartments, in the apartment that was the subject of the search warrant with Appellant in 2012. (10RR97). Appellant paid the rent. (10RR97). Appellant made his living selling drugs. (10RR97).

Cline had seen Appellant with prescription bottles and believed he used these in selling drugs. (10RR97). Cline believed Appellant to sell drugs mostly in "random parking lots," including the parking lot of the bar where Detective Arredondo worked an extra job. (10RR99).

Appellant told Cline not to touch the cabinet above the refrigerator. (10RR100). Appellant was living with Cline on the day the search warrants were executed. (10RR101-02). Appellant had the key to the garage and Cline never had access to the garage unless Appellant specifically allowed her in. (10RR102). Appellant had his own key to the apartment and could come and go as he pleased. (10RR102). The men's clothing that was in the apartment closet and dresser on the day the search warrants were executed belonged to Appellant. (10RR103).

Appellant told Cline about being ripped off in a drug deal. (10RR104). Later, he told her that he got "the real thing." (10RR104). Cline saw Appellant put the paper bag in the cabinet on top of the refrigerator. (10RR109). Appellant told Cline that he made crack cocaine, but she never saw him make it at their apartment. (10RR109).

Cline never knew Appellant to have legitimate employment. (10RR113).

16

# SUMMARY OF THE ARGUMENT

Appellant first argues that the dog sniffs used in the underlying search warrant affidavits were illegal under *Jardines*. The State responds that these dog sniffs did not take place within the curtilage of a home, and are therefore not illegal even applying *Jardines*. Were this Court to hold that these searches were conducted within the curtilage of the home, the Court should allow the good faith exception to apply and not exclude this evidence because the police and magistrate relied on the law as it then existed. Finally, the search warrant affidavits provided adequate probable cause to search these locations, whether the dog sniffs are included or not.

The evidence was legally sufficient to affirmatively link Appellant to the narcotics in the apartment and the garage because he was seen coming and going from these locations several times, his belongings were in the home and garage, and his live-in girlfriend testified the drugs were Appellant's.

Appellant has not brought forth a sufficient record on appeal to establish that his trial counsel was ineffective, nor that he was prejudiced by any such ineffectiveness.

Appellant has not brought forth a sufficient record to establish that any evidence was withheld or destroyed, nor that it would have been material to his defense.

17

Appellant was made aware of the circumstances of Laura Cline's agreement with the State, and it was specifically referenced during her direct examination. Appellant made no claim during trial that he was unaware of anything relating to Cline's testimony.

The trial court did not abuse its discretion in denying Appellant's motion for a mistrial because the trial court gave an effective curative instruction.

**Response to Appellant's First and Second Points of Error**

<u>**THE SEARCH WARRANT AFFIDAVIT WAS SUFFICIENT TO ESTABLISH PROBABLE CAUSE TO SEARCH THE APARTMENT AND GARAGE BECAUSE THE JARDINES RULING DOES NOT APPLY TO THESE LOCATIONS, AND EVEN IF IT DID, THIS COURT SHOULD REFUSE TO SUPPRESS THE EVIDENCE BECAUSE THE POLICE AND REVIEWING MAGISTRATE RELIED ON THEN-EXISTING BINDING PRECEDENT IN THE PROCUREMENT AND REVIEW OF THE SEARCH WARRANT, AND EVEN IF THE DOG SNIFF IS REMOVED FROM THE AFFIDAVIT, THERE WAS STIL SUFFICIENT PROBABLE CAUSE**</u>

**Standard of Review**

Trial courts' rulings on motions to suppress evidence are generally reviewed under a bifurcated standard of review, giving almost total deference to the facts found by the trial court and reviewing *de novo* its application of the law. *See Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). When a trial court's ruling is a determination of whether there was probable cause to support a search warrant, the court is constrained to the four corners of the warrant and there are no credibility determinations to be made. *State v. McLain*, 337 S.W.3d 268,

18

271 (Tex. Crim. App. 2011). "[B]ecause of the constitutional preference for searched to be conducted pursuant to a warrant as opposed to a warrantless search," the sufficiency of an affidavit is reviewed to determine if there is a substantial basis upon which the magistrate could have concluded that probable cause existed. *Id*. (*citing Illinois v. Gates*, 462 U.S. 213, 236 (1983). For the same reason, the review is "highly deferential" to the magistrate's decision. *Id*. This deference is extended to the magistrate's determination of probable cause in order to encourage the use of warrants, which "greatly reduces the perception of unlawful or intrusive police conduct." *Gates*, 462 U.S. at 236. "This substantial basis standard of review does not mean the reviewing court should be a rubber stamp but does mean that the magistrate's decision should carry the day in doubtful or marginal cases, even if the reviewing court might reach a different result upon *de novo* review." *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010) (internal quotations omitted).

A search warrant may not issue without a sworn affidavit showing facts sufficient to establish probable cause. Tex. Code. Crim. Proc. art. 18.01(b), (c). Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found at the specified location at the time the warrant is issued. *See McLain*, 337 S.W.3d at 272. To establish probable cause, the affidavit must show:

> (1) that a specific offense has been committed, (2) that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and (3) that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched.

Tex. Code Crim. Proc. art. 18.01(c). "The facts stated in a search warrant affidavit 'must be so closely related to the time of the issuance of the warrant that a finding of probable cause is justified.'" *McLain*, 337 S.W.3d at 272 (quoting *Flores v. State*, 827 S.W.2d 416, 418 (Tex. App.—Corpus Christi 1992, pet. ref'd)).

When reviewing a search warrant affidavit under the "substantial basis" standard, the affidavit is to be interpreted in a commonsense and realistic manner, giving deference to all reasonable inferences that the magistrate could have made. *See Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007); *Jones v. State*, 338 S.W.3d 725, 733 (Tex. App.—Houston [1st Dist.] 2011 *aff'd* 364 S.W.3d 854 (Tex. Crim. App. 2012). The reviewing court will consider the totality of the circumstances, including whether any tips have been corroborated by independent police work. *Gates*, 462 U.S. at 238; *see Rodriguez*, 232 S.W.3d at 62.

However, when an affidavit contains tainted information, the same deference to the magistrate's determination is not called for. *State v. Le*, 463 S.W.3d 872, 877 (Tex. Crim. App. 2015). "'When part of a warrant affidavit must be excluded from the calculus [because that information was illegally obtained] … then it is up to the reviewing courts to determine whether the independently acquired and lawful

20

information stated in the affidavit nevertheless clearly established probable cause.'" *Id*. quoting *McClintock v. State*, 444 S.W.3d 15, 19 (Tex. Crim. App. 2014). A search warrant which was issued based in part on illegally obtained information is "nonetheless valid if it clearly could have been issued on the basis of the untainted information in the affidavit." *Id*., quoting *Brown v. State*, 605 S.W.2d 572, 577 (Tex. Crim. App. 1980).

Reviewing courts will still review the affidavit, even after it is purged of its illegally obtained portions, in keeping with the mandate of *Illinois v. Gates*, that it be reviewed in a commonsense, realistic manner, drawing reasonable inferences from the information contained in it. *Rodriguez*, 232 S.W.3d at 61.

### Argument and Authorities

Appellant argues in his first point of error that the Jardines ruling disallowed the dog sniff in this case, and the police and reviewing magistrate were not entitled to rely on then-existing precedent in allowing the search warrant based on the dog sniff to issue. App. Br. at p. 16. In his second point of error, Appellant argues that the search warrant affidavits did not establish probable cause. App. Br. at p. 29. Because these two points of error are necessarily intertwined, the State will address them jointly.

**The search warrants were properly issued, and the dog sniff was not illegal even applying *Jardines* because it was not conducted within the curtilage of a home**

In *Jardines*, the United States Supreme Court held that a dog sniff on the defendant's front door was a search, and the entry by the police dog onto the curtilage of the defendant's home was a trespassory invasion of the defendant's privacy. *Florida v. Jardines*, 133 S.Ct. 1409, 1414-15 (2013). The Supreme Court held in *Jardines* that the government violated the defendant's Fourth Amendment rights by "gathering information in an area belonging to Jardines … in the curtilage of the house, which we have held enjoys protection as part of the home itself." *Id.* at 1414.

Whether a particular area is part of a curtilage is determined by whether the defendant had a reasonable expectation of privacy in the area. *Matthews v. State,* 165 S.W.3d 104, 112 (Tex. App. - Fort Worth 2005, no pet.). Some of the Factors to be considered are whether the accused had a complete dominion or control of the area, whether he had the right to exclude others, whether he took normal precautions customarily taken by those seeking privacy, and whether he put the place to some private use. *Villareal v. State*, 935 S.W.2d 134, 139 (Tex. Crim. App. 1996). A public place is not within the curtilage. *Matthews*, 165 S.W.3d at 112. The Texas Penal Code has defined a "public place" as "any place to which the public or a substantial group of the public has access and includes, but is not

22

limited to streets, highways, and the common areas of ...apartment houses." Tex. Pen. Code §1.07(a)(40).

### The dog sniff at the garage

The garage that Appellant used, and kept narcotics in, was a detached garage, distant from the apartments themselves and distant, in particular, from Appellant's apartment. (12RR at MTS Ex. 4). There is a significant body of case law standing for the proposition that the garage in this case was not part of the curtilage of Appellant's home. *See, e.g.*, *United States v. Dunn*, 480 U.S. 294, 301 (1987) (barn separate from a ranch house was not within the curtilage of the home); *Evans v. State*, 995 S.W.2d 284, 286 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (common areas of an apartment complex not part of the curtilage of the home); *Cuero v. State*, 845 S.W.2d 387, 391 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (parking lot of an apartment complex not part of the curtilage of the home).

The dog sniff on Appellant's garage took place at a location that was not within the curtilage of the home as that term has been defined by the above precedents. Therefore, even applying *Jardines* to this case, the dog sniff conducted at Appellant's garage was legal because no trespassory invasion of Appellant's home took place in the course of this dog sniff. Therefore, the search warrant

which was issued based in part on that dog sniff was legal and the trial court did not err in refusing to suppress the narcotics found in the garage.

### The dog sniff outside Appellant's apartment

The dog sniff outside of Appellant's apartment presents a closer call than that outside his garage. However, there is still precedent for the proposition that this search also did not involve a trespassory invasion of Appellant's privacy rights in keeping with the mandate of *Jardines*.

The public areas of an apartment complex are not considered part of the curtilage of the home. *Evans*, 995 S.W.2d at 286; *Cuero*, 845 S.W.2d at 391; *Williams v. State*, No. 05-07-00704-CR, 1998 WL 348320 (Tex. App.—Dallas 1998, no pet.) (not designated for publication); *see United States v. Ramirez*, 145 Fed. Appx. 915, 923 (5th Cir. 2005).

The front door of Appellant's apartment complex, where the dog sniff took place, is along a breezeway with a staircase at either end. (12RR at MTS Ex. 1-3, 7-10). This breezeway allows for other residents and members of the public to access it and to walk freely through it. Even were Appellant able to make an argument that he should be able to restrict the access of passersby to his front door, in this case any person with any particular purpose could walk past his door for any given purpose in order to go to any other apartment on that floor. Appellant's ability to restrict the access of outsiders was far less than that in *Jardines*, or in

24

*McClintock* wherein a dog sniff was suppressed post-*Jardines*. *McClintock v. State*, 405 S.W.3d 277, 280 (Tex. App.—Houston [1st Dist.] 2013, *rev'd on other grounds* 444 S.W.3d 15 (Tex. Crim. App. 2014) (landing where dog sniff took place outside of defendant's apartment was not a common area in that it led only to the defendant's door).

Because the dog sniff outside Appellant's apartment too place in a common area where Appellant could not meaningfully restrict the access of the public, it should be considered not to have taken place within the curtilage of the home in contrast with *McClintock*. Therefore, the dog sniff should be considered legal and the search warrant based in part upon it should be held to have been issued lawfully. The trial court did not err in refusing to suppress the evidence obtained in the search of Appellant's apartment.

**Even if *Jardines* would disallow the dog sniffs were it applied to this case, it should not be applied to this case because the police and magistrate relied on then existing precedent in seeking and issuing the search warrant**

The Supreme Court held in *Jardines*, that a dog sniff of a curtilage without a warrant is a Fourth Amendment violation. *Florida v. Jardines,* 133 S. Ct. 1409, 1415-18 (2013). However, the question of whether exclusion is appropriate is separate from the question of whether a dog sniff is constitutional. *United States v. Leon*, 468 U.S. 897, 906 (1984). The State therefore urges this Court to consider whether the exclusionary rule should be applied here, in keeping with the Court of

Criminal Appeals' order that the First Court of Appeals consider that question in *McClintock*. *McClintock*, 444 S.W.3d 15 (Tex. Crim. App. 2014) (remanding for lower court to consider whether a good faith exception to the Texas exclusionary rule should be applied). It should be noted that the First Court of Appeals has since held that there was no good faith exception to the Texas exclusionary rule in *McClintock* on remand, but the Court of Criminal Appeals has not yet addressed this. *McClintock v. State*, No. 01-11000572-CR, 2015 WL 6851826 (Tex. App.— Houston [1st Dist.] 2015, no pet. h.).

Courts created the exclusionary rule for the "sole purpose" of deterring future fourth amendment violations. *Davis v. United States*, 131 S.Ct. 2419, 2427 (2011).Therefore, suppression is appropriate "only in those unusual cases in which exclusion will further [that purpose]." *Leon*, 468 U.S. at 918. It is one thing for the defendant to go free because the police blundered. *Davis*, 131 S.Ct. at 2434. It is another to set the criminal free because the officer "scrupulously adhered to governing law." *Id*. Evidence should be "suppressed only if it can be said that the law enforcement officer had knowledge...that the search was unconstitutional under the Fourth Amendment." *Leon*, 468 U.S. at 919.

In this case, the dog sniff occurred before the ruling in *Jardines* was issued by the United States Supreme Court, and the police did not have knowledge that the search was unconstitutional. Instead, they were following the numerous cases

26

that told them a dog sniff was not a search, and therefore not a violation of the constitution. The United States Supreme Court previously held that a dog sniff is not a search because a dog sniff will alert only to the presence of narcotics, and "any interest in possessing contraband cannot be deemed 'legitimate'." *Illinois v. Caballes*, 543 U.S. 405, 409-410 (2005). The Fifth Circuit also repeatedly held that a dog sniff is not a search. *United States v. Seals*, 987 F.2d 1102, 1106 (5th Cir. 1993); *United States v. Hernandez*, 976 F.2d (5th Cir.), cert. denied, 508 U.S. 914 (1993); *United States v. Dovali-Avila*, 895 F.2d 206 (5th Cir. 1990).

Texas courts also adhered to this rule and held that a dog sniff outside a residence is not a search under the Fourth Amendment. *See Rodriguez v State*, 106 S.W.3d 224 (Tex.App.—Houston [1st Dist.] pet. ref'd) (a dog sniff is not a search because it does not reveal anything about the house other than the presence of an illegal narcotic); *Porter v. State*, 93 S.W.3d 342 (Tex.App.—Houston [14th Dist.] pet. ref'd) (held that a dog sniff is an investigative technique, not a violation of the Fourth Amendment); *Romo v. State*, 315 S.W.3d 565 (Tex.App.—Fort Worth pet. ref'd) (areas not protected from observation have no reasonable expectation of privacy, and therefore dog sniff searches are not violations of the Fourth Amendment or the Texas Constitution).

When the police engaged in the dog sniffs and then sought search warrants based on them, they were complying with the current standing of criminal

procedure law at that time and arguably as it sits still today as this case does not involve the curtilage of a residence. However, should this Court disagree with the State's position on the application of curtilage in either of the search warrants issued, the apartment or the detached garage unit, the Court should find instructive the recent opinion of *Taylor v. State* 410 S.W.3d 520, 527 (Tex.App.—Amarillo 2013, no pet.). In *Taylor* the court examined a parallel issue of whether to apply the exclusionary rule to suppress evidence received by use of a GPS monitoring device that was installed under previous criminal procedure standards deemed acceptable by the litany of case law and statutory guidance in the code of criminal procedure prior to the ruling in *U.S. v Jones*, 132 S. Ct. 945 (2012). In *Jones*, the Supreme Court ultimately held that a warrantless installation and use of a GPS tracking device on a suspect's vehicle constitutes a "search" under the Fourth Amendment. Prior to this ruling law enforcement officers, as did the officers in *Taylor*, relied on the statutory guidance provided by section 14 of the Article 18.21 of the Texas Code of Criminal Procedure which allowed for law enforcement officers to apply for "Order Authorizing Installation and Utilization of a Mobile tracking Device." *See id.* Further, the *Taylor* court rationalized that there existed several United States courts of Appeal, including the Fifth Circuit, and United States Supreme Court holdings which approved warrantless installation and

monitoring of GPS units on vehicles remaining on public roads. *See id*. In its final

holding, the *Taylor* court ruled:

> Based on the state of the law as it existed at the time the mobile
> tracking device was installed on the vehicle being driven by Appellant
> (Taylor), even assuming without deciding that a Fourth Amendment
> violation occurred and the suppression would otherwise be
> appropriate, the evidence in this case would not have been subject to
> the exclusionary rule because the officers acted in reasonable reliance
> on federal precedent in the majority of the federal circuit courts of
> appeal, including the Fifth Circuit, that had considered the issue where
> the installation of the device otherwise complied with the "reasonable
> suspicion" standard in article 18.21, section 14 of the Texas Code of
> Criminal Procedure.

*See id*.

This ruling is further consistent with a Fifth Circuit Court of Appeals holding that

concluded "searches conducted in objectively reasonable reliance on binding

appellant precedent are not subject to the exclusionary rule." *Davis v. United*

*States*, 131 S. Ct. 2419, 2423-24 (2011). The same parallel argument applies to the

actions of the Task Force in this present case whereby they utilized an open air

sniff by a trained and certified narcotic detecting dog on Appellant's apartment and

detached garage.

It should of course be noted that Appellant relies not only on the federal, but

the State exclusionary rule. That being the case, the State again urges this Court to

consider whether a good faith exception applies to the State exclusionary rule in

Texas Code of Criminal Procedure article 38.23. In so doing, the State would urge

this Court to examine the wording of that article, which states that evidence obtained in violation of law is to be suppressed. Tex. Code Crim. Proc. art. 38.23(a). In this case, the evidence was not obtained in violation of law – to the contrary, the police complied with the law as it then existed. Further, section (b) of the article states that it is "an" exception to the requirement that illegally obtained evidence be suppressed that it was obtained in reliance on a warrant issued based on probable cause. However, the article does not state that this is the only exception.

The State would urge this Court to consider whether good faith applies as an exception to article 38.23 as the Court of Criminal Appeals mandated in *McClintock*, and in opposition to its sister court, hold that this exception does apply.

**The search warrant affidavits established probable cause to issue the search warrants for Appellant's garage and apartment**

Appellant argues in his second point of error that the search warrant affidavits did not establish probable cause. App. Br. at p. 29. Because the legality of the searches based on the search warrant affidavits require analysis of whether the affidavits were sufficient to establish probable cause with or without the dog sniffs depending on how this Court rules as to the legality of those dog sniffs, both scenarios are addressed here.

**The search warrant affidavits when considered with the dog sniffs**

A dog hit, by a trained and certified narcotics dog provides probable cause for a search warrant. *See Florida v. Harris*, 133 S.Ct. 1050, 1058 (2013); *Romo v. State*, 315 S.W.3d 565, 573 (Tex. App.—Fort Worth 2010, pet. ref'd); *Rodriguez v. State*, 106 S.W.3d 224, 229 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd), *Wilson v. State*, 98 S.W.3d 265, 272 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). Because the K-9 "Mike" in this case has been certified by the National Narcotic Detector Dog Association, and the defendant has not successfully challenged the reliability of the dog, there was probable cause for a search warrant based on the open air sniff positive alert for the presence of narcotic odor on Appellant's apartment and garage.

These dog sniffs were conducted on the same day that the search warrants were executed, and therefore the information gleaned from them, that narcotics would likely be found in those locations, was by no means stale. In short, the dog sniffs in and of themselves essentially would have provided probable cause for the issuance of the search warrants. Of course, there was significant other information included in the search warrant affidavits, which would have provided probable cause for the issuance of the warrants even not considering the dog sniffs.

**Even excising the dog sniffs from the affidavits, the search warrants establish probable cause to search Appellant's apartment and garage**

Probable cause is "a conclusion that the object of the search is probably on the premises to be searched." *Davis v. State*, 202 S.W.3d 149, 154 (2006). Courts may also draw reasonable inferences from facts contained within the affidavit. *Id* at 157. If the dog alert is removed from consideration by this Court, there still exist sufficient facts constituting probable cause for issuance of each search warrant, for the apartment and the garage. The information in the affidavit is to be viewed based on the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

The search warrant affidavits state that (1) on February 21, 2012, a confidential informant had information that Appellant was selling drugs from the apartment and garage he shared with his girlfriend Laura Cline; (2) Appellant was named by arrestees as being the source of narcotics in their possession on two different occasions; (3) in April of 2012, a reliable confidential informant told the police where Appellant was living and that he was living with Laura Cline; (4) on May 8, 2012, the affiant saw Appellant and Cline meet in a parking lot of the apartment complex where the confidential informant said they lived and where Cline's name was on the lease; (5) Appellant was on parole for narcotics violations in Louisiana; (6) on the same day, the affiant saw Appellant use a remote control to open the garage door to the garage that Appellant and Cline rented; (7) Appellant

was then stopped for a traffic violation, and a subsequent search of his vehicle following a positive dog alert to the odor of narcotics revealed approximately $6,000 in cash and prescription pills belonging to Appellant; (8) on September 18, 2012, the affiant was told by Detective Arredondo that patrons of the Frankenstein's sports bar on Mason road had made complaints that Appellant was selling drugs there; (9) after "multiple days of surveillance," the affiant saw Appellant park his vehicle in the garage rented by Appellant and Cline; (10) on October 1, 2012, the affiant had a meeting with a detective with the Department of Public Safety who told the affiant that he also had learned that Appellant was supplying narcotics to the Katy area; (11) on October 18, 2012, the affiant saw Appellant engage in what appeared to be two hand-to-hand drug transactions. (12RR at MTS Ex. 15, 16).

"Hearsay may be used to show probable cause so long as there is a substantial basis for crediting the hearsay." *Jones v. State*, 338 S.W.3d 725 (Tex. App.—Houston [1st Dist.] 2011) *aff'd* 364 S.W.3d 854 (Tex. Crim. App. 2012). In this case, the affidavit stated that the informant had provided credible and reliable information in the past. Even if the first informant was not reliable, other sources supplied the same information to the police, there a failure to "establish the first informant's reliability or credibility is therefore not fatal." *Id*. at 735.

When the police confirmed Appellant's address and saw him leave and return to that address, they demonstrated that Appellant had been seen at a location where, taken with the other evidence, there was a fair probability that illegal drugs would be found. *State v. York*, 404 S.W.3d 681, 686 (Tex. App. —Fort Worth, 2013, pet. ref'd). In *York*, as in this case, the fact that the defendant had previous offenses relating to narcotics, and the fact that the defendant had been connected to individuals involved in drugs, gives further weight that there was a fair probability that controlled substances would be found at the specified address. *Id.* at 685.

The surveillance and other information about Appellant's illegal narcotics activity had been ongoing for several months. This fact, combined with the fact that Appellant had been known to inhabit the same residence and use the same garage over this lengthy period, lends credence to the notion that it was likely that drugs would be found in these locations. In short, the reviewing magistrate had sufficient information on which to base a finding that there existed probable cause to believe narcotics would be found in these locations.

Appellant's first and second points of error should be overruled.

**Response to Appellant's Third Point of Error**

## THE EVIDENCE WAS LEGALLY SUFFICIENT TO "AFFIRMATIVELY LINK" APPELLANT TO THE NARCOTICS SEIZED IN HIS APARTMENT AND GARAGE

**Standard of Review**

In reviewing the legal sufficiency of the evidence to support a conviction, the critical inquiry is whether, considering the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Webb v. State*, 801 S.W.2d 529, 530 (Tex. Crim. App. 1990). The appellate court views the evidence in the light most favorable to the verdict, whether the case was proven by direct or circumstantial evidence. *Houston v. State*, 663 S.W.2d 455 (Tex. Crim. App. 1984). Following the Court of Criminal Appeals' decision in *Brooks v. State*, legal sufficiency is the only standard for reviewing the sufficiency of a trial court judgment, and factual sufficiency has been entirely subsumed within it. *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010).

**Argument and Authorities**

Appellant argues in this point of error that the evidence affirmatively linking him to the contraband and the apartment was legally insufficient. App. Br. at p. 40. However, Appellant's argument must fail because it leaves out significant facts and is not in keeping with the case law addressing this issue.

35

To prove a defendant unlawfully possessed a controlled substance, the State must show that (1) the defendant exercised care, custody, control, or management over the substance; and (2) the defendant knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). The evidence, whether direct or circumstantial, "must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous." *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). That another person than the "accused might have joint possession of the premises does not require the State to prove that the defendant had sole possession of the contraband, only that there are affirmative links between the defendant and the drugs such that he, too, knew of the drugs and constructively possessed them." *Poindexter*, 153 S.W.3d at 412.

Texas courts have identified a non-exhaustive list of possible affirmative links, including (1) the defendant's presence when a search is conducted; (2) whether the contraband is in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether other contraband or drug paraphernalia was present; (5) whether the defendant owned or had the right to possess the place where the drugs were found; (6) whether the defendant was found with a large amount of cash; (7) and whether the conduct of the defendant indicated a consciousness of guilt. *Evans v. State*, 202 S.W.3d 158, 162 fn. 12 (Tex. Crim.

36

App. 2006). It is the logical force of all of the evidence, direct and circumstantial, rather than the number of links present, which is dispositive. *Id*. at 162. The absence of certain links does not constitute evidence of innocence to be weighed against the links present. *Satchell v. State*, 321 S.W.3d 127, 134 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd).

Appellant has listed several of the affirmative links present in this case. App. Br. at p. 40. With regard to the drugs found in the apartment, Appellant noted that the police found mail addressed to Appellant in the apartment along with male clothing. (9RR17, 23). However, Appellant leaves out that officers saw Appellant coming and going from the apartment on numerous occasions. (9RR91-94, 96). There were numerous tips that Appellant was engaged in drug dealing. (9RR91-94). Further, Appellant's girlfriend Laura Cline testified that the drugs in the apartment were Appellant's. (10RR97, 104).

There can hardly be more legally sufficient evidence that a defendant committed the offense of possessing (and indeed selling) narcotics than the testimony of someone who saw the defendant commit this offense. While Appellant might argue Cline was not to be believed, credibility determinations are in the hands of the jury, and the jury evidently believed Cline's testimony. Therefore, the evidence is legally sufficient to link Appellant to the drugs in the apartment and his point of error should be overruled in this regard.

As to the drugs found in the garage, Appellant again leaves out several pertinent facts. He does concede that there was male clothing found in the garage. App. Br. at p. 40. However, he leaves out that Appellant was seen coming and going from the garage by the police on numerous occasions. (9RR96). Appellant was seen by the police to have the remote control to the garage door. (9RR95). Appellant was seen going into the garage in a blue Honda by the police. (8RR44). Further, Cline testified that Appellant was the only one who had access to the garage. (10RR102).

Again, the facts were sufficient to establish that Appellant was affirmatively linked to the contraband. Appellant's third point of error should be overruled.

**Response to Appellant's Fourth Point of Error**

## <u>APPLICANT HAS NOT PROVEN THAT HIS COUNSEL WAS INEFFECTIVE</u>

### Standard of Review

"Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation." *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). "A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim." *Id*. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Id*. (internal quotations omitted). "To

overcome the presumption of reasonable professional assistance, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id*. (internal quotations omitted).

<h3 style="text-align:center">Argument and Authorities</h3>

To establish that his trial counsel was ineffective, Appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms, and that there is a reasonable probability that but for counsel's ineffectiveness, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668 (1984).

Where there are only broad claims of ineffectiveness without support in the record, the appellant has not proven his claim of ineffectiveness by a preponderance of the evidence. *Chambers v. State*, 903 S.W.2d 21, 34 (Tex. Crim. App. 1995) ("We do not know on the bases if the record exactly why counsel chose not to question [the venireman]. Therefore, we cannot say that appellant has overcome the presumption that counsel's failure to do so did not fall within the wide range of reasonable professional assistance"); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (holding that where the record contains no evidence to overcome the presumption of effective assistance, the reviewing court will not reverse); *Levy v. State*, No. 01-13-00379-CR, 2014 WL 3408697 (Tex.

App.—Houston [1st Dist.] Jul. 10, 2014, pet. ref'd) (not designated for publication); *see Ortiz v. State*, 93 S.W.3d 79, 88-89 (Tex. Crim. App. 2002); *see also Shore v. State*, No. AP-75,049, 2007 WL 4375939 at *15-16 (Tex. Crim. App. Dec. 12, 2007) (not designated for publication).

**Appellant has produced no evidence of ineffective assistance**

There is nothing in the record that clearly establishes ineffectiveness in Appellant's trial counsel's representation. There was no motion for new trial, nor any hearing on such a motion, and therefore there is nothing in the record regarding Appellant's trial counsel's decision-making process. Because Appellant has not pointed to any evidence in the record which would overcome the presumption of effective assistance, his point of error should be overruled.

**Ineffectiveness for not seeking disclosure of identity of confidential informant**

Appellant argues in his first sub-point that his trial counsel was ineffective for not seeking disclosure of the identity of the confidential informant referenced in the search warrant affidavit. App. Br. at p. 42. Appellant concedes that the State had a privilege not to disclose this informer's identity under Texas Rule of Evidence 508(a). App. Br. at p. 43. However, Appellant asserts that his trial counsel should have sought disclosure because the informer's identity was necessary to a fair determination of guilt or innocence under Texas Rule of Evidence 508(c). App. Br. at p. 43.

Appellant's argument is inapposite because the informer provided only one piece of information, that Appellant was dealing drugs. (12RR at Ex. 15, 16). This was the reason the investigation started, but nothing else. The confidential informant was not used beyond that. Therefore, his or her only importance was in one sentence of the search warrant affidavit, the underlying facts of which did not constitute the basis for Appellant's charges in this case. Therefore, the confidential informant witnessed nothing that was necessary for a determination of guilt or innocence in this case – only something that helped form the basis of the search warrant affidavit.

Appellant argues that the confidential informant's identity could have helped impeach Laura Cline, Appellant's live-in girlfriend, or could have established that identity was mistaken. However, Appellant was seen at that apartment by officers working on the case, and the officers knew Appellant by sight. ((9RR91-96). Therefore, the idea that a confidential informant would have shown that the officers did not know who they were looking at when they had seen Appellant before, had been in his apartment, and had conducted a traffic stop on him before, is without merit. Appellant has established neither ineffectiveness nor prejudice.

Appellant's first sub-point should be overruled.

**Motion for Spoliation**

Appellant next argues that his trial counsel was ineffective, and that he was prejudiced by "his trial counsel's failure to timely file and obtain a ruling on the motion to exclude the contraband in this case based upon spoliation because it would have supported his assertion that the contraband was obtained in illegal warrantless searches not pursuant to legal search warrants." App. Br. at p. 48.

The contraband that was the subject of these indictments was seized pursuant to search warrants. (12 RR at Ex. 15, 16). Appellant's point of error is without any basis in fact, and so his argument that Appellant "lost his opportunity to question whether the search of the premises in this case was pursuant to a lawfully issued warrant" is meritless. App. Br. at p. 49. Appellant had a hearing on the legality of the search warrants and obtained a ruling on that motion. (4RR57-61).

Appellant has shown neither ineffectiveness nor prejudice.

**Failure to have Appellant testify at suppression hearing**

Appellant next asserts that his trial counsel was ineffective for not calling him to testify at the suppression hearing because he could have testified in such a way that "supported the totality of the circumstances that the contraband for which he was found guilty in this case was seized without probable cause." App. Br. at p.

50. Appellant appears to be arguing that because Cline said she did not initially see the search warrant that no search warrant existed. App. Br. at p. 50.

The search warrants and supporting affidavits were entered into evidence. (12 RR at Ex. 15, 16). The trial court held a hearing on the legality of the search warrants and overruled Appellant's objections to them. (4RR57-59). Appellant does not attempt to identify what he specifically would have testified to, and the record contains no evidence as to what Appellant would have testified to. Any argument that Appellant's testimony would have materially altered the proceedings is mere conjecture. Appellant also makes no attempt to identify how he was prejudiced by his counsel's decision not to call him as a witness.

Appellant's bald claims of ineffective assistance and prejudice, without any supporting evidence should be overruled.

**Failure to request a 38.23 instruction**

Appellant again points to nothing in the record that would establish his trial counsel's reasoning for any strategic decision he made, and as such there is not a sufficient record on which to make finding of ineffectiveness, much less prejudice.

Further, Appellant argues that a 38.23 instruction should have been requested because it "would have allowed the jury to determine whether the searches of the apartment and garage were reasonable under the circumstances." App. Br. at p. 50. Appellant states that there was a disputed issue of material fact

in that "the lawfulness of the searches were plainly put in issue by the conflicting testimony regarding the search warrants." App. Br. at p. 50. Appellant appears to argue that the evidence raised an issue as to whether the premises were searched pursuant to the search warrants in this case.

The warrants were the subject of a contested pretrial hearing and were found to be based on sufficient probable cause. Such a determination is a legal question for the judge rather than the jury. There was no disputed issue of fact that the apartment and garage were searched pursuant to the warrants. No one ever testified otherwise. Therefore, there was no disputed issue of material fact in any event.

**Failure to move for a new trial**

Appellant then argues that a new trial should have been requested because "the contraband for which he was found guilty was the fruit of warrantless searches." App. Br. at p. 54.

There is no record as to Appellant's trial counsel's decision not to file a motion for new trial. Therefore Appellant has not presented a sufficient record on appeal to secure a finding of ineffectiveness.

Further, there were two search warrants in this case, and no one ever testified that the evidence in this case was procured in any way other than via the execution of these search warrants.

Appellant's fourth point of error should be overruled.

**Response to Appellant's Fifth Point of Error**

## APPELLANT HAS WAIVED HIS *BRADY* COMPLAINT, AND EVEN IF HE HAD NOT, HE HAS NOT SHOWN EITHER THE DESTRUCTION OF EVIDENCE, NOR THAT ANY SUCH SUPPOSEDLY DESTROYED EVIDENCE WAS MATERIAL

### Standard of Review

To find reversible error under *Brady*, a defendant must show that: (1) the State failed to disclose evidence, regardless of the prosecutor's good or bad faith; (2) the withheld evidence is favorable to him; and (3) the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002).

### Argument and Authorities

#### Waiver

A claim that the State has violated its *Brady* duties can be procedurally defaulted, and in order to avoid such default, a complaint must be made to the trial court in a timely fashion. *Wilson v. State*, 7 S.W.3d 136, 146 (Tex. Crim. App. 1999). To be timely, a complaint must be made as soon as the grounds for the complaint are apparent or should be apparent. *Id*.; *Temple v. State*, 342 S.W.3d 572, 591 (Tex. App.—Houston [14th Dist.] 2010), *aff'd* 390 S.W.3d 341 (Tex. Crim. App. 2013). When previously undisclosed evidence is disclosed at trial, the

defense has an opportunity to move for a continuance. *Williams v. State*, 995 S.W.2d 754, 761 (Tex. App.—San Antonio 1999, no pet.). The failure to request a continuance waives any purported *Brady* violation. *Id*.

Appellant's argument appears to be that because of "the destruction of and/or withholding of all police call logs and communication tapes involved in the surveillance," Appellant's due process rights were violated. App. Br. at p. 55. However, Appellant does not point out anywhere that such items were ever requested, much less where the records show that they were wrongfully withheld or destroyed. Further, Appellant does not point out where any objection was made to such supposed withholding or destruction, nor does he point out where any request for a continuance was made. Appellant does no more than make a bald assertion that these items might have been material, and even in cases where a much better argument was to be made regarding materiality, Texas courts have held that such complaints were waived where no objection or motion for continuance was made. *See, e.g., State v. Fury*, 186 S.W.3d 67 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (*Brady* claim waived where complaint not made until motion for new trial filed).

Because Appellant did not timely object to the supposed withholding or destruction of this evidence, he has waived this complaint and his fifth point of error should be overruled.

**Materiality**

Appellant does no more to argue that this supposedly destroyed evidence was material than to say so. App. Br. at p. 55-56. Appellant appears to argue that the supposedly destroyed or withheld dispatch logs and the like were exculpatory and therefore the withholding or destruction of them would be a due process violation regardless of the good or bad faith of the State. Ap. Br. at p. 55, citing *Illinois v. Fisher*, 540 U.S. 544 (2004). However, Appellant does not even attempt to point to anything in the record which would establish that these items were actually withheld or destroyed. Further, he also does not point to anything that would indicate what the contents of these records were, certainly nothing to indicate what exculpatory material might be contained therein.

"The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Hampton*, 86 S.W.3d at 612 quoting *United States v. Agurs*, 427 U.S. 97, 112-13 (1976).

Appellant's claim should fail firstly because he has not even established that this information was withheld or destroyed. Secondly, Appellant has not even attempted to show how this evidence would have been favorable to him.

Because Appellant has not established that any supposedly withheld or destroyed evidence would have been material, his fifth point of error should be overruled.

**Response to Appellant's Sixth Point of Error**

## APPELLANT POINTS TO NO EVIDENCE THAT THE STATE WITHHELD ANY AGREEMENT FOR LENIENCY WITH ANY WITNESS WHICH THE DEFENSE WAS NOT AWARE OF

### Standard of Review

To find reversible error under *Brady*, a defendant must show that: (1) the State failed to disclose evidence, regardless of the prosecutor's good or bad faith; (2) the withheld evidence is favorable to him; and (3) the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Hampton*, 86 S.W.3d at 612.

### Argument and Authorities

Appellant argues that "[t]o the extent that Laura Cline received any benefits for her testimony from the State, such as a dismissal or reduction in her charges, the State clearly intentionally created a false impression before the jury." App. Br. at p. 59. Appellant's argument appears to be that if Cline received some benefit which was not disclosed, the State would have violated its duties under *Brady* to make the defense aware of such an offer of leniency in exchange for Cline's testimony.

48

The State concedes that it would have a duty to disclose any offer of leniency it made to Laura Cline. However, Appellant does not point to anything in the record indicating that there was in fact some offer of leniency in exchange for Cline's testimony in exchange for her testimony beyond what was brought out on direct examination. Appellant also does not indicate anywhere in the record evidence or an objection by defense counsel that there was any such offer of leniency to Cline in exchange for her testimony that the defense team was unaware of.

Cline was questioned regarding her possible bias in favor of the State by the State's attorney including her entry of a plea to the misdemeanor marijuana case she was charged with. That exchange included the following colloquy:

Q. Okay. When this first occurred, you were initially charged from the sheriff's office with possession of controlled substance for all the items located inside the house and garage; correct?

A. Yes.

Q. Okay. At some point in time you made an agreement to come here and testify today?

A. Yes.

Q. Part of that arrangement was that you would take responsibility for your marijuana; correct?

A.    Yes.

Q.    And that you would come here and testify truthfully –

A.    Yes.

(10RR110-11).

The State's attorney later further inquired into Cline's possible bias in favor of the State and any potential agreements with the State in exchange for her testimony:

Q.    Okay.  Now, at the pendency of this investigation you had some concern about your immigration status.  Is that correct?

A.    Yes.

Q.    Was that a motivation, I guess, to also cooperate with the State?

A.    Yes, because I didn't want to leave my child and be deported.  I didn't want to lose my child and be deported.

Q.    What have you learned about your actual citizenship status since this case begun?

A.    I was actually an American citizen when I got there and I was released.

…

Q.    So I want to be clear, your possible deportation status, your citizenship status is not dependent on anything you say here today?

50

A.     No.  I go for my oath ceremony tomorrow.  I would have had it last month, but my mom passed away.

(10RR116-17).

Appellant's counsel also questioned Cline at length about her potential bias in favor of the State based on her immigration status and her criminal charges. (10RR119, 128-29, 135-36).

There is nothing in the record establishing that there was some agreement between Laura Cline and the State which the defense team was not aware of. Because Appellant has pointed to nothing in the record that would indicate such an agreement was made and not disclosed to the defense, his sixth point of error should be overruled.

**Response to Appellant's Seventh Point of Error**

## <u>THE TRIAL COURT DID NOT ABUSE ITS DISCRETION WHEN IT DENIED APPELLANT'S MOTION FOR A MISTRIAL BECAUSE THE COURT GAVE AN EFFECTIVE CURATIVE INSTRUCTION</u>

### Standard of Review

An appellate court reviews a trial court's decision to deny a mistrial under an abuse of discretion standard.  *See Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).  "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required."  *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).

## Argument and Authorities

Appellant argues that the trial court erred when it denied his motion for a mistrial based on Laura Cline's testimony that Appellant "had a record from Louisiana." App. Br. at p. 60.

Appellant made a timely objection and motion for a mistrial based on this testimony. (10RR113-15). The trial court denied the motion for mistrial and gave the jury an instruction to disregard Cline's statement about Appellant's prior criminal history. (10RR115).

In most instances, an instruction to disregard inadmissible testimony will cure the error. *Westbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). Generally, a witness's reference to a defendant's criminal history, standing alone, is cured by a prompt instruction to disregard. *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). To determine whether a trial court abused its discretion in denying a motion for mistrial, a reviewing court will consider three factors: (1) the severity of the misconduct; (2) the measures adopted to cure the misconduct; and (3) the certainty of conviction absent the misconduct. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007).

In this case, the prejudicial effect was limited because Cline's comment was isolated[1], and the evidence of Appellant's guilt was significant. The State did not emphasize Appellant's prior record, nor otherwise attempt to reference Cline's comment again. Further, the trial court gave a prompt instruction to the jury to disregard the comment. These facts militate in favor of holding that the trial court did not err in denying Appellant's motion for a mistrial. Such a holding is in keeping with a significant body of Texas case law. *See, e.g., Ladd v. State*, 3 S.W.3d 547, 571 (Tex. Crim. App. 1999) (instruction to disregard cured witness's statement about defendant's prior juvenile arrests); *Whitaker v. State*, 977 S.W.2d 595, 600 (Tex. Crim. App. 1998) (instruction to disregard witness statement about extraneous offense sufficient to cure error).

Appellant's seventh point of error should be overruled.

---

[1] Though it should be noted Cline earlier made a statement that Appellant had been "charged with the same things" and though trial counsel objected, he did not move for a mistrial or request a curative instruction. (10RR97-98).

## **PRAYER**

Wherefore, premises considered, Appellee prays that Appellant's points of error be overruled and his conviction and sentence be affirmed in all things.

Respectfully submitted,

**John F. Healey, Jr.**

 /s/ Jason Bennyhoff
**Jason Bennyhoff**
Assistant District Attorney
Fort Bend County, Texas
S.B.O.T. No. 24050277
301 Jackson Street Room 101
Richmond, Texas 77469
281-341-4460 (office)
281-341-8638 (fax)

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Appellee's brief has been served by way of the electronic service function on the E File Texas website, on the date of the filing of the original in this case.

/s/ Jason Bennyhoff

Jason Bennyhoff

**Certificate of Compliance with Texas Rule of Appellate Procedure 9.4(i)(3)**
In accordance with Texas Rule of Appellate Procedure 9.4(i)(3), I, Jason Bennyhoff, hereby certify that the foregoing electronically created document has been reviewed by the word count function of the creating computer program, and has been found to be in compliance with the requisite word count requirement in that its word count with regard to those portions of the brief subject to the word count requirement is 12,358 words.

/s/ Jason Bennyhoff

Jason Bennyhoff